Mack Willie THOMAS, Petitioner,

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 89SC25.

Supreme Court of Colorado,
En Banc.

Oct. 9, 1990.
Rehearing Denied Oct. 29, 1990.

David F. Vela, Colorado State Public Defender, Jaydee K. Bachman, Deputy State Public Defender, Greeley, for petitioner.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for respondent.

Justice LOHR delivered the Opinion of the Court.

We granted certiorari to review the Colorado Court of Appeals' judgment in *People v. Thomas*, 770 P.2d 1324 (Colo.App.1988). The defendant, Mack Willie Thomas, was convicted of two counts of sexual assault on a child, § 18–3–405, 8B C.R.S. (1986). On appeal to the court of appeals, he challenged the admission of videotaped depositions of two child victims pursuant to section 18–3–413, 8B C.R.S. (1986), and contended that his due process rights were denied by the failure of the prosecution to elect a specific incident of alleged sexual assault as the basis for each of the charges against him. The court of appeals found no error in the trial court's ruling that the prosecution was not required to elect a specific incident. The court of appeals remanded the case to the trial court, however, for further findings regarding the unavailability of the child witnesses in order to establish whether the videotapes were admissible under section 18–3–413. We hold that in the absence of an election by the prosecution, the court should have instructed the jury more specifically on the need for unanimity concerning the incident or incidents relied on, but conclude that, in this case, failure to instruct in further detail was harmless error. We also conclude that further findings regarding the children's unavailability are unnecessary be-

cause the trial court's findings are adequate and supported by the record. We therefore affirm the judgment in part, reverse it in part, and remand the case to the court of appeals with directions to reinstate the trial court's judgment of conviction.

## I.

The jury found Thomas guilty of two counts of sexual assault on a child, § 18-3-405, 8B C.R.S. (1986). The first count alleged that Thomas assaulted his daughter, L.T., between the dates October 1, 1984, and September 30, 1985. L.T. was born on September 28, 1981, and so was three years old during most of the time in question. The second count alleged that Thomas assaulted a neighbor boy, J.P., between the dates July 1, 1984, and September 30, 1985. J.P. was born March 12, 1980, and therefore was four and five years old during the period covered by the charge.

Between August 1980 and July 11, 1985, Thomas resided at 109 Bass Circle, Lafayette, Colorado, with his then wife Susan Frey–Thomas, their two children L.T. and T.T., and Susan's son from a previous marriage. During part of each year, Thomas' daughter S.T., born of a previous marriage, also resided with the family. J.P. lived across the street from the Thomas' Bass Circle home. He and L.T. were good friends.

On July 11, 1985, Susan Frey–Thomas and Mack Thomas separated and Susan, L.T. and T.T. moved out of the Bass Circle house. Soon afterwards, and after the dissolution of the marriage, Mack Thomas remarried and his new wife moved into the Bass Circle house. After the Thomas–Frey separation, L.T. and T.T. visited their father at his home on two weekends: August 4–7, 1985, and September 13–15, 1985.

Testimony at trial concerned sexual abuse of L.T. and J.P. by Thomas that included genital fondling and oral and anal sex. We granted certiorari to consider two issues: first, whether the trial court properly admitted videotaped depositions of L.T. and J.P. into evidence; and second, whether the prosecution adequately specified the acts of sexual assault upon which the jury was to base its decision. We will address each of these issues in turn.

## II.

■ Pursuant to the trial court's order, videotaped depositions of L.T. and J.P. were taken at the C. Henry Kempe Center for the Treatment and Prevention of Child Abuse and Neglect. The same procedure was followed in both depositions. The child was taken into a room with two therapists, one selected by the prosecution and one by the defendant. The judge, the court reporter, the prosecutor, the defendant and the defense counsel went into another room. By using a one-way mirror and videotape monitors, they could see and hear what was happening in the room in which the child was being questioned by the therapists. The therapists were not in electronic communication with the attorneys or the defendant, but it was possible for notes to be passed in to the therapists. Rather than having the judge administer an oath at the start of the depositions, one of the therapists explained to the child that it was important to tell the truth and asked the child whether he or she knew the difference between telling the truth and lying.[1] The child was questioned first by the therapist chosen by the prosecutor and then by the therapist chosen by the defendant. Each deposition was videotaped and later shown to the jury at trial.

Thomas argues that the videotaped depositions were not taken in compliance with the requirements of section 18-3-413, 8B C.R.S. (1986), and that their admission into evidence violated his right to confront the witnesses against him. We disagree.

---

1. L.T. explained that there is "what really is." She explained lying by providing an example: "[t]hat means if I said—um—if I had a real live cat and I don't really have a real live cat." Later, when asked what things are bad, L.T. replied "not telling the truth." The therapist chosen by the prosecutor repeatedly emphasized to L.T. the importance of telling the truth. J.P. explained that to tell the truth is to "[t]ell what really happens." He also said that a lie is "[s]omething bad."

### A.

Section 18–3–413, 8B C.R.S. (1986), provides:

(1) When a defendant has been charged with an unlawful sexual offense, as defined in section 18–3–411(1),[2] and when the victim at the time of the commission of the act is a child less than fifteen years of age, the prosecution may apply to the court for an order that a deposition be taken of the victim's testimony and that the deposition be recorded and preserved on video tape.

(2) The prosecution shall apply for the order in writing at least three days prior to the taking of the deposition. The defendant shall receive reasonable notice of the taking of the deposition.

(3) Upon timely receipt of the application, the court shall make a preliminary finding regarding whether, at the time of trial, the victim is likely to be medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence. Such finding shall be based on, but not be limited to, recommendations from the child's therapist or any other person having direct contact with the child, whose recommendations are based on specific behavioral indicators exhibited by the child. If the court so finds, it shall order that the deposition be taken, pursuant to rule 15(d) of the Colorado rules of criminal procedure,[3] and preserved on video tape. The prosecution shall transmit the video tape to the clerk of the court in which the action is pending.

(4) If at the time of trial the court finds that further testimony would cause the victim emotional trauma so that the victim is medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence, the court may admit the video tape of the victim's deposition as former testimony under rule 804(b)(1) of the Colorado rules of evidence.

In this case, the prosecution did not seek to take videotaped depositions of L.T. and J.P. at the outset but filed several notices of its intent to offer hearsay statements of L.T. and J.P. The prosecution wished to offer these statements under both section 13–25–129, 6A C.R.S. (1987), the child victim hearsay statute, and CRE 803(24), the residual exception to the hearsay rule.

As the trial court held, section 13–25–129's requirements control over the more general requirements of CRE 803(24). *People v. Diefenderfer*, 784 P.2d 741, 752 (Colo.1989). Under section 13–25–129, a child's out-of-court statements regarding sexual acts must have "sufficient safeguards of reliability." § 13–25–129(1)(a); *Diefenderfer*, 784 P.2d at 748. If the child is not available to testify at trial, there must also be "corroborative evidence of the act which is the subject of the statement." § 13–25–129(1)(b)(II); *Diefenderfer*, 784 P.2d at 748.[4]

---

**2.** § 18–3–411(1), 8B C.R.S. (1986), defines "unlawful sexual offense" to include "sexual assault on a child, as defined in section 18–3–405," the crime of which the defendant was charged and convicted.

**3.** Crim.P. 15(d) provides:

If the subpoenaed deponent appears before the judge who ordered his deposition taken and is willing to testify immediately, at the request of the deponent for good cause shown, the judge forthwith shall:

(1) Procure the presence of the prosecuting attorney or one of his deputies;

(2) Procure the presence of each defendant and his counsel;

(3) Take the deposition; and

(4) Upon completion of the deposition, discharge the witness.

If any defendant is without counsel or his attorney fails to attend, the court shall advise him of his right and, unless he elects to proceed without counsel, shall assign counsel to represent him at that hearing only. Depositions shall be taken and transcribed as the court may direct and upon completion shall be lodged with the clerk of the court.

In his brief, the defendant contends that the requirement that the defendant's presence be procured means that the defendant must be permitted to be in the room where the child is questioned. Crim.P. 15(d), however, contains no such explicit or implicit requirement. *People v. Newbrough*, 803 P.2d 155, 158 (Colo.1990).

**4.** § 13–25–129 provides in pertinent part:

(1) An out-of-court statement made by a child ... describing any act of sexual contact ... performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule ... is admissible ... if:

At a hearing following the filing of the notices, the trial court found that both L.T. and J.P. were competent but for purposes of section 13–25–129, were likely to be unavailable to testify at trial in an open courtroom session. The trial court then suggested that videotaped depositions of L.T. and J.P. be conducted.[5] After the hearing, the prosecution filed motions requesting the court to order videotaped depositions and the court did so.

Before ordering a videotaped deposition pursuant to section 18–3–413(3), a trial court must make a preliminary finding that at trial the child "is likely to be medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence." In its hearing concerning the hearsay statements offered pursuant to section 13–25–129, the trial court found that both L.T. and J.P. were likely to be unavailable to testify at trial.[6] A child is "unavailable" as a witness for purposes of section 13–25–129 if "the child's emotional or psychological health would be substantially impaired if [the child] were forced to testify and ... such

> (a) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and
> (b) The child either:
> (I) Testifies at the proceedings; or
> (II) Is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement.

5. The trial court apparently suggested the videotaped depositions as a means of protecting the defendant's right to confrontation and of avoiding the corroboration requirement of section 13–25–129(1)(b)(II). We did not grant certiorari on the question of whether a child's videotaped deposition amounts to "[t]estif[ying] at the proceedings" for purposes of § 13–25–129(1)(b)(I), with the result that hearsay statements may be admitted without corroboration, and we express no opinion regarding it. § 18–3–413(4) provides that a videotaped deposition taken pursuant to § 18–3–413 may be admitted as former testimony under CRE 804(b)(1).

6. The court stated that "I am ... willing to make the finding that the child [L.T.] is unavailable as a witness because of her age and her emotional inability to testify. At least in an open courtroom session.... I find by a pre-

impairment will be long standing rather than transitory in nature." *Diefenderfer*, 784 P.2d at 750. We believe that this definition also describes a form of "medical unavailability" for the purpose of section 18–3–413(3).[7] To meet the requirements of the confrontation clause of the sixth amendment to the United States Constitution, discussed below, we further interpret section 18–3–413 to require a finding that the potential long-term substantial impairment be the result of trauma that would be caused by testifying in the presence of the defendant, rather than trauma that would be caused merely by testifying in open court. *See Maryland v. Craig*, —— U.S. ——, 110 S.Ct. 3157, 3169, 111 L.Ed.2d 666 (1990).[8] Although in this case the court's summary findings do not pinpoint the source of the trauma the children are predicted to suffer, the court's conclusions are based on the uncontradicted testimony of experts who explained that it would be traumatic for the children to testify in front of the defendant. We conclude that the trial court's findings were adequate for the purposes of the preliminary findings required by section 18–3–413(3).

ponderance of evidence that because of [J.P.'s] age and emotional status, he is also unavailable to testify in an open courtroom hearing."

7. § 18–3–413(3) does not define "medically unavailable." It does specify, however, that the court's preliminary finding of unavailability is to be "based on, but not limited to, recommendations from the child's therapist or any other person having direct contact with the child, whose recommendations are based on specific behavioral indicators exhibited by the child." § 18–3–413(4) also uses the term "medically unavailable" and refers to a circumstance in which "the court finds that further testimony would cause the victim emotional trauma so that the victim is medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence." These statutory provisions suggest that a determination of medical unavailability under § 18–3–413 is intended to be based upon the same criteria developed in more detail in *Diefenderfer*, 784 P.2d at 750, for the purpose of determining whether the child is "unavailable" as a witness under § 13–25–129.

8. We do not decide at this time whether this requirement also applies to findings of unavailability under § 13–25–129.

Prior to admitting a videotaped deposition at trial, the court must find that the child is, in fact, unavailable. § 18–3–413(4). The defendant contends that the trial court did not make proper findings of unavailability and that the record does not support a conclusion that L.T. and J.P. were unavailable.

Section 18–3–413(4) allows the introduction of a child victim's videotaped deposition into evidence if the trial court finds, at the time of trial, that "further testimony would cause the victim emotional trauma so that the victim is medically unavailable." § 18–3–413(4). We interpret medical unavailability, as in the case of section 18–3–413(3), to include a situation in which testifying in front of the defendant would cause the child substantial and long term emotional or psychological harm. *See Diefenderfer*, 784 P.2d at 750. In ruling that the children were unavailable, the trial court stated:

> What I mean by their unavailability is that because of the trauma and the inability to testify in open court, and in front of the defendant Mr. Thomas, and in front of a jury and open courtroom, I think that would be far more harmful to these children than any other thing.

We conclude that these findings were adequate. In this case, the court's findings were based on uncontradicted testimony of experts who had interviewed the children. Jane Pequette, a clinical psychologist, stated that testifying in open court, in front of the defendant would cause L.T. severe and long-lasting emotional damage. Polly Mahoney, a social worker, testified that J.P. would be unpredictable in a courtroom setting and might suffer emotional damage. She described J.P.'s fear that the defendant would hear him telling people what the defendant had done to him.[9] She said that J.P. was "terrified" at that prospect. She concluded that J.P. had "extraordinary fears" and unrealistic fantasies about being punished for testifying.[10] Because this was the only relevant testimony, it is apparent that the trial court accepted it. We therefore conclude that the trial court's somewhat cursory findings are sufficient. We also hold that based on this testimony, the trial court did not err in finding L.T. and J.P. medically unavailable within the meaning of section 18–3–413(4).

### B.

■ The defendant also contends that admission of the videotaped depositions into evidence violated his right under the federal constitution to confront the witnesses against him.[11] The sixth amendment provides that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. This right of an accused includes "the right physically to face those who testify against him, and the right to conduct cross-examination." *Pennsylvania v. Ritchie*, 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987); *see also People v. Bastardo*, 191 Colo. 521, 524, 554 P.2d 297, 300 (1976).

The United States Supreme Court has recently emphasized that the right of confrontation "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2800, 101 L.Ed.2d 857 (1988). The right to face-to-face confrontation, however, is not absolute. *Maryland v. Craig*, —— U.S. ——, 110 S.Ct. 3157, 3163, 111 L.Ed.2d 666

---

**9.** J.P. told Polly Mahoney that the defendant had a "listening hat" that allowed him to hear what others in a different location were saying.

**10.** Polly Mahoney testified that "[J.P.] said, 'I was afraid to tell because Mack had said if I did tell,' . . . [I would be] 'sent to jail and never see [my] mom again, and she would go to jail, too.'"

**11.** U.S. Const. amend. VI. The federal confrontation right is applicable to the states through the fourteenth amendment. *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The Colorado Constitution also provides that "[i]n criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face." Art. II, sec. 16. Because the parties base their arguments on the federal confrontation clause, we do not consider the validity of the procedures used in this case under the Colorado constitutional provision.

(1990); *Ohio v. Roberts,* 448 U.S. 56, 64, 100 S.Ct. 2531, 2538, 65 L.Ed.2d 597 (1980); *see also People v. Dement,* 661 P.2d 675, 680 (Colo.1983). Although face-to-face confrontation is preferred, that preference "must occasionally give way to considerations of public policy and the necessities of the case." *Craig,* 110 S.Ct. at 3165 (quoting *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895)).

This year, in *Maryland v. Craig,* the United States Supreme Court upheld a Maryland statute allowing the use of closed-circuit television at trial to permit a child abuse victim to testify from another room without being able to see the defendant.[12] Before allowing testimony by closed-circuit television, the Maryland statute requires the trial judge to find that " 'testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate.' " *Id.,* 110 S.Ct. at 3161, n. 1 (quoting Md.Cts. & Jud.Proc.Code Ann. § 9–102(a)(1)(ii) (1989)). The Supreme Court upheld the Maryland procedure, concluding "if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." *Id.* at 3169. The court explained that before permitting the closed-circuit testimony "[t]he trial court must ... find that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." *Id.*[13]

Under the Supreme Court holding in *Craig,* in addition to being conditioned on a case-specific finding of necessity, the closed-circuit testimony must have sufficient guarantees of reliability.[14] *Id.* at 3166; *see also Roberts,* 448 U.S. at 65–66, 100 S.Ct. at 2538–2539; *Diefenderfer,* 784 P.2d at 747. Although the trial court need not make a particularized finding of reliability, the procedure used to obtain the testimony must provide sufficient guarantees of reliability. The Court upheld the Maryland procedure, concluding that "the presence of these other elements of confrontation—oath, cross-examination, and observation of the witness' demeanor—adequately ensures that the testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, in-person testimony." *Craig,* 110 S.Ct. at 3166.

■ In applying the requirements enunciated in *Craig* to the case before us, we conclude that the defendant's rights under the confrontation clause were not violated by the use of videotaped depositions. The trial court's findings in support of its conclusion that L.T. and J.P. were unavailable provide the particularized finding of necessity required by *Craig.* The more difficult question is whether the procedure used to produce the videotaped depositions provided sufficient guarantees of reliability. We conclude that it did.

---

12. Under the Maryland procedure, the child witness, prosecutor and defense counsel withdrew to a separate room. The judge, jury and defendant remained in the courtroom, but the defendant could communicate with defense counsel electronically. The child witness was examined and cross-examined while video equipment recorded and displayed the witness' testimony to those in the courtroom. The witness could not see the defendant.

13. In summation, the Court stated that its holding applies "at least where such trauma would impair the child's ability to communicate." 110 S.Ct. at 3170. The reasoning of the Court's opinion, however, suggests that its holding would apply in cases in which the trauma would be injurious to the child but would not have the specific adverse effect of impairing the child's ability to communicate.

14. The United States Supreme Court employed several different formulations in describing the reliability protections required. The reliability of the testimony must be "otherwise assured," *Craig,* 110 S.Ct. at 3166; protections are referred to as having "safeguards of reliability and adversariness," *id.;* and it is necessary that the procedure "ensures the reliability of the evidence by subjecting it to rigorous adversarial testing and thereby preserves the essence of effective confrontation," *id.* at 3170. We adopt the rubric "sufficient guarantees of reliability" to describe the requisite reliability protections.

■ Initially, we recognize that *Craig* involved live testimony via closed-circuit television rather than presentation of a videotape of a deposition taken at an earlier time. We believe, however, that the same reliability concerns exist as to both methods of introducing testimony in evaluating the adequacy of the procedures to satisfy the requirements of the confrontation clause. Although a videotaped deposition is pre-recorded, the relevant safeguard recognized in *Craig* is not the fact that the testimony is live, but the fact the jury can view the child's demeanor during questioning. We conclude, therefore, that the standards for evaluating the sufficiency of guarantees of reliability of videotaped depositions of a child's testimony should be the same as those employed in *Craig* to assess the reliability of the procedures for presentation of a child's live testimony by closed-circuit television.

Although in *Craig*, the United States Supreme Court did not indicate the minimum requirements of a reliable procedure, it emphasized four aspects of the Maryland procedure: (1) the child witness was found competent to testify; (2) the child testified under oath; (3) the defendant retained the right to cross-examine the witness contemporaneously; and (4) the judge, jury and defendant were able to view the demeanor of the witness as she testified. *Id.* at 3166.

■ In this case, three of those four elements were clearly present. The trial court found both L.T. and J.P. competent to testify. The purpose of an oath was satisfied when the children were asked at the start of each videotaped deposition to explain the difference between the truth and a lie and were told at critical times that it was very important that they tell the truth. *See* n. 1, *supra.* Finally, closed-circuit cameras allowed the defendant, the attorneys and the judge to observe the children during the depositions and the videotapes allowed the jury to view the demeanor of the children during questioning.

The only question is whether the defendant retained the right to contemporaneous cross-examination, one of the factors relied on by the court in *Craig* as assuring that the procedure provided the functional equivalent of live, in-person testimony. *Craig*, 110 S.Ct. at 3166. In *Craig*, the prosecutor and the defense attorney directly questioned the child witness, and the defendant remained in electronic communication with his attorney throughout the testimony. In this case, the child was questioned by two therapists, one chosen by the prosecution, the other by the defendant. The attorneys and the defendant could not communicate electronically with the therapists, but could pass them notes. The decision to have the questioning done by therapists rather than the attorneys was made by the mutual consent of the prosecution, defense counsel and the court.[15] The court gave the parties the option of having the attorneys ask the questions. Because defense counsel consented to the questioning by therapists, and because defense counsel had the opportunity to pass notes to the therapists suggesting questions to be asked of the child, we decline to hold that absence of attorney questioning makes this procedure unreliable.[16] We conclude, therefore, that the videotaped depositions of L.T. and J.P. meet the requirements of necessity and reliability outlined in *Craig* and that their admission did not violate the defendant's confrontation clause rights.

### III.

We next consider the defendant's contention that his due process rights were violated because the prosecution was not re-

---

15. The defendant filed a brief in opposition to the prosecution's motions for videotaped depositions of L.T. and J.P. In that brief, the defendant argued that L.T. and J.P. were not unavailable and that the depositions would violate the defendant's right to face-to-face confrontation. In the defendant's reply brief before this court, however, he concedes that he waived any objection to therapist questioning and implicitly acknowledges that it is not an issue in this certiorari proceeding.

16. We do not decide in this case whether therapist questioning over the defendant's objection would fatally impair the sufficiency of the guarantees of reliability of videotaped deposition testimony.

quired to specify a particular incident of sexual abuse forming the basis of the conviction sought.

In *Laycock v. People*, 66 Colo. 441, 182 P. 880 (1919), we held that where there is evidence of many acts, any one of which would constitute the offense charged, the prosecution may be compelled to select the transaction on which it relies for a conviction. *Id.* at 444, 182 P. at 881. The prosecution need not specify the exact date the offense took place, but it must specify a particular act. *Id.* at 445, 182 P. at 881. In *People v. Estorga*, 200 Colo. 78, 612 P.2d 520 (1980), we applied the *Laycock* rule to a child sexual assault case. In *Estorga*, we reasoned that the specification was necessary to ensure unanimous jury agreement that the defendant had committed the same act and to enable the defendant to prepare a defense to the specific act charged. *Id.* at 81, 612 P.2d at 523; *see also Kogan v. People*, 756 P.2d 945 (Colo.1988) (relying solely on the defense preparation rationale because trial was to the court).

Some states require either that the prosecution select a particular act or that the jurors be instructed that they all must agree that the defendant committed the same act. *Covington v. State*, 703 P.2d 436, 440 (Alaska App.1985); *State v. Petrich*, 101 Wash.2d 566, 683 P.2d 173, 178 (1984). In requiring the prosecution to elect a particular act, some jurisdictions focus solely on the need to ensure a unanimous jury verdict rather than the defense preparation rationale. *Covington*, 703 P.2d at 440; *State v. Bailey*, 144 Vt. 86, 475 A.2d 1045, 1052 (1984); *Petrich*, 683 P.2d at 178.

In the present case, the defendant filed a motion requesting an order that the prosecution select specific dates and acts as to the offenses charged. In response, the trial court ruled that the prosecution must pick a specific sexual act for each charge, but would not be required to designate a particular time or date. The prosecution selected the touching of the defendant's hands to L.T.'s vaginal area and the touching of the defendant's penis to J.P.'s anal area. The trial court ruled that if at the close of trial the evidence had demonstrated a number of such sexual acts, the prosecution would have to be more specific. During the preparation of jury instructions, the defendant objected to instruction no. 8, which provided that the prosecution "need not prove the exact date of occurrence, but you must find beyond a reasonable doubt that the acts specified occurred" [17] within the time periods charged. The defendant argued that *Estorga* requires the selection of a particular transaction in order to assure a unanimous verdict in support of a conviction. The court overruled the objection on the basis that "the disputed issue is whether or not the defendant committed a specified or designated act, not on whether he did it on one or on other occasions or more than one time." The court ruled, therefore, that the prosecution had "sufficiently designated specific and individualized acts as to each child." The court of appeals agreed, holding that "[s]ince there was evidence of a continuing pattern of conduct by defendant, his reliance on [*Estorga*] is misplaced." *Thomas*, 770 P.2d at 1330.

This case demonstrates the difficulty of applying the specification requirement to certain cases involving evidence of a continuing pattern of sexual abuse of very young children. In this case, most of the evidence of sexual abuse consisted of statements of the child victims. As is common with children of this age, the testimony of L.T. and J.P. does not clearly identify discrete instances when particular acts took place, much less provide a list of dates and times. *See People v. Jones*, 51 Cal.3d 294, 270 Cal.Rptr. 611, 617, 792 P.2d 643, 649 (1990); *State v. Brown*, 55 Wash.App. 738, 780 P.2d 880, 885 (1989). Both L.T. and J.P. provided detailed descriptions of particular sexual contacts but also spoke in generalities. It was not clear how many different times these contacts took place. Sometimes, in the early stages of the state-

---

**17.** The acts specified were again described in instruction no. 9 as the defendant's hand upon the vagina of L.T. with respect to the first charge and the contact of the defendant's penis with the anus or perineum of J.P. as to the second.

ments of the children, they denied that the sexual misconduct ever happened, but at other times they said it happened frequently. Although the testimony of the children, if believed, was convincing that they were the victims of a number of criminal acts by the defendant, the difficulty of isolating and identifying one or more sexual acts for consideration by the jury is manifest.

Although we have not yet addressed the application of *Estorga* in the context of evidence of repeated sexual abuse of very young children within the time period covered by the charge,[18] a recent decision of the California Supreme Court provides useful guidance. In *People v. Jones,* 51 Cal.3d 294, 270 Cal.Rptr. 611, 792 P.2d 643 (1990), the California Supreme Court held that the difficulty in differentiating among various acts of sexual abuse in evidence should not preclude a conviction so long as there is no reasonable likelihood of jury disagreement regarding the defendant's commission of any of the acts. *Id.,* 270 Cal.Rptr. at 626, 792 P.2d at 658.[19] The court noted that credibility is usually the decisive issue in child sexual abuse cases of this kind.

> [T]he jury either will believe the child's testimony that the consistent, repetitive pattern of acts occurred or disbelieve it. In either event, a defendant will have his unanimous jury verdict ... and the prosecution will have proven beyond a reasonable doubt that the defendant committed a specific act, for if the jury believes that the defendant committed all the acts it necessarily believes he committed each specific act.

*Id.,* 270 Cal.Rptr. at 627, 792 P.2d at 659 (quoting *People v. Moore,* 211 Cal.App.3d 1400, 260 Cal.Rptr. 134, 144 (1989)).

The California Supreme Court concluded:

> In a case in which the evidence indicates the jurors might disagree as to the particular act defendant committed, the standard unanimity instruction should be given.... But when there is no reasonable likelihood of juror disagreement as to particular acts, and the only question is whether or not the defendant in fact committed all of them, the jury should be given a modified unanimity instruction which, in addition to allowing a conviction if the jurors unanimously agree on specific acts, also allows a conviction if the jury unanimously agrees the defendant committed all the acts described by the victim.

*Id.,* 270 Cal.Rptr. at 626, 792 P.2d at 658 (citation omitted); *see also State v. Brown,* 55 Wash.App. 738, 780 P.2d 880, 885 (1989).[20]

■ We adopt the reasoning of the California Supreme Court in *Jones* and hold that when the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed, the prosecution need not designate a particular instance. If the prosecutor de-

---

**18.** *Estorga* involved a ten-year-old victim and "four or five" occasions on which the charged sexual abuse could have occurred. *Estorga,* 200 Colo. at 80, 612 P.2d at 522.

**19.** The California Supreme Court also rejected the defense preparation argument. The court acknowledged that due process requires that a defendant be advised of the charges against him so that he can prepare his defense, but concluded that the defendant received adequate notice through the charging document, the preliminary hearing and the discovery process. 270 Cal. Rptr. at 625, 792 P.2d at 657; *see also Covington,* 703 P.2d at 439; *People v. Thompson,* 160 Cal. App.3d 220, 206 Cal.Rptr. 516, 520 (1984).

**20.** In *State v. Brown,* 55 Wash.App. 738, 780 P.2d 880 (1989), the Washington Court of Appeals suggested that the rationale for the unanimity instruction as an alternative to prosecutorial election is in the difficulty of distinguishing discrete incidents of sexual misconduct in cases where a young child is subjected to abuse over a long period. The court explained:

> Particularly when the accused resides with the victim or has virtually unchecked access to the child, and the abuse has occurred on a regular basis and in a consistent manner over a prolonged period of time, the child may have no meaningful reference point of time or detail by which to distinguish one specific act from another. The more frequent and repetitive the abuse, the more likely it becomes that the victim will be unable to recall specific dates and places. Moreover, because the molestation usually occurs outside the presence of witnesses, and often leaves no permanent physical evidence, the state's case rests on the testimony of a victim whose memory may be clouded by a blur of abuse and a desire to forget.

*Id.,* 780 P.2d at 885.

cides not to designate a particular instance, the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.[21] Necessarily, the determination whether there is a reasonable likelihood that jurors may disagree on which acts the defendant committed requires the exercise of discretion by the trial court. In some instances, special verdicts may be advisable to provide assurance that a verdict is supported by unanimous jury agreement.

In reaching this result, we are aware that it appears to be at odds with the rationale of *Kogan.* That case involved allegations that a school teacher improperly touched the breast and vaginal areas of several fourth grade students over a period spanning two school years.[22] Following the presentation of evidence in a trial to the court, the defendant moved for an order requiring the prosecution to elect a specific act upon which it would rely for conviction on each count. There, as here, the prosecution contended that it was impossible to establish any specific act "due to the nature of the children's recollection, the nature of the act, the acts they were subjected to, and because of their ages and lack of time anchor." *Kogan,* 756 P.2d at 955. The trial court denied the motion to elect. On appeal, we held that the denial constituted error, relying on *Estorga.* Although conceding that the jury unanimity concern voiced in *Estorga* was not relevant in a trial to the court, we held that the defense preparation rationale was "a compelling one." *Kogan,* 756 P.2d at 956.

The facts in *Kogan,* however, suggested that the defendant might derive special value from the specification of particular acts. The acts charged all occurred while the defendant and a victim were at the defendant's desk in a classroom filled with other students. Identification of the particular room, class and period of time might have been of important assistance to the defendant in seeking to impeach the testimony of the victims or to identify defense witnesses. In contrast, the incidents at issue in the present case occurred with only the defendant and one or both of the victims present. Moreover, we believe that we overemphasized the importance of the defense preparation rationale in *Kogan* and *Estorga. Estorga* does not suggest that the election need be made before the conclusion of the prosecution's case. At that time there is little opportunity for further defense preparation. As the California Supreme Court has concluded, at least in most instances the defendant can obtain adequate information to prepare a defense through the charging document, the preliminary hearing, and the discovery process. *Jones,* 270 Cal.Rptr. at 625, 792 P.2d at 657. The right to seek a bill of particulars provides the defendant and the trial court with a procedure by which the defendant can be provided with further detail in advance of trial sufficient to facilitate trial preparation. *See* Crim.P. 7(g). Of course, the ultimate concern is a fair procedure that accords protection to the due process rights of the defendant. The facts must always be evaluated to ascertain whether an election by the prosecution is essential to accord due process to a defendant.

■ Although the jurors in this case were not instructed that they must unanimously agree that the defendant committed the same act or that the defendant committed all of the acts described by the victim, we determine that the error was harmless beyond a reasonable doubt. *See Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Germany v. People,* 198 Colo. 337, 340, 599 P.2d 904, 906 (1979). The trial court significantly narrowed and focused the charges by requiring the prosecution to elect a particular type of act as to each victim. The evidence at trial included nothing that would lead a

---

21. What is essential is that the jury be in agreement that the defendant committed a particular act or series of acts.

22. The specific charges for which the defendant was convicted covered periods ranging from six weeks to nine months. *Kogan,* 756 P.2d at 954.

juror to conclude that the acts of those types described by the victims occurred on some occasions testified to by the victims but not on others. *Compare State v. Altgilbers*, 109 N.M. 453, 786 P.2d 680, 696 (App.1989) (where nothing in the evidence distinguished among the various acts that could have been the basis for conviction on any particular count, there would have been no rational basis for some jurors to predicate guilt on one act while other jurors grounded it on another; any error in failing to give a unanimity instruction, therefore, was harmless), *with State v. Kitchen*, 110 Wash.2d 403, 756 P.2d 105 (1988) (conflicting evidence existed as to each incident relied on; the failure to instruct on the requirement of unanimous agreement on a particular incident, therefore, was not harmless). The evidence presented by the prosecution suggests repeated acts of sexual abuse during the charged time period. The defense evidence was general and designed to show that none of the incidents occurred, rather than providing an individualized defense aimed at discrete alleged instances. The evidence presented no rational basis for some jurors to predicate guilt on one act while other jurors based it on another. *See Altgilbers*, 786 P.2d at 696. Under these circumstances, we conclude that the jury verdicts reflected the unanimous agreement required by law. *See generally People v. Slaughter*, 211 Cal.App.3d 577, 259 Cal. Rptr. 437 (1989); *Altgilbers*, 786 P.2d at 696; *State v. Loehner*, 42 Wash.App. 408, 711 P.2d 377 (1985).

### IV.

In sum, we hold that the videotaped depositions were properly admitted as authorized by section 18–3–413, 8B C.R.S. (1986), and that their admission did not violate the defendant's right to confrontation under the federal constitution. We also hold that the jurors should have been instructed that in order to find the defendant guilty of a particular charge they must unanimously agree either that the defendant committed the same individual act or acts or that he committed all of the acts described by the victim. We conclude, however, that the trial court's failure to give such an instruction in this case was harmless error. Accordingly, we affirm the court of appeals' judgment in part and reverse it in part. We remand the case to the court of appeals with instructions to reinstate the defendant's conviction.

Justice VOLLACK does not participate.