Mack Willie THOMAS, Petitioner,

v.

Frank GUENTHER, Executive Director, Colorado Department of Corrections, Canon City, Colorado, Respondent.

Civ. A. No. 90–B–2079.

United States District Court,
D. Colorado.

Jan. 16, 1991.

Barbara S. Blackman, Cherner and Blackman, Denver, Colo., for petitioner.

John Daniel Dailey, Deputy Atty. Gen., Denver, Colo., for respondent.

## MEMORANDUM OPINION & ORDER

BABCOCK, District Judge.

Before me is (1) Mack Willie Thomas' (Thomas) Petition for Writ of Habeas Corpus and (2) Frank Guenther's (the State) motion to vacate stay order. In 1986, Thomas was convicted and sentenced on two counts of sexual assault on a child in the District Court of Boulder County, Colorado. In his petition for habeas relief, Thomas alleges, as he did before all levels of the Colorado state courts, that his sixth amendment right to be confronted with the witnesses against him was violated. His claim is based on the admission at trial of videotaped depositions of the victims in lieu of the children's live testimony. Because, under the procedures followed at the trial, allowing the jury to view the videotaped testimony did not deprive Thomas of his confrontation rights, I deny the petition for habeas corpus. Additionally, I vacate my Order staying the State from taking Thomas into custody.

## I. PETITION FOR HABEAS CORPUS

Thomas filed his petition for habeas corpus pursuant to 28 U.S.C. § 2254. Habeas corpus relief is obtainable in a federal court if, pursuant to a state court judgment, a person is in custody in violation of the United States Constitution. 28 U.S.C. § 2254(a). A Writ of Habeas Corpus can be issued only when a petitioner has exhausted all state court remedies. 28 U.S.C. § 2254(b). There is no dispute that Thomas is in custody for the purpose of habeas relief.

It is also undisputed that Thomas has exhausted his state court remedies and presented the federal constitutional claim in the state court proceedings. After his conviction on two counts of sexual assault on a child in August, 1986, 85–CR–736–4, Thomas appealed to the Colorado Court of Appeals. 770 P.2d 1324 (Colo.App.1989). The court of appeals remanded the case for additional findings on the unavailability of

the two alleged victims. After Thomas' motion for rehearing was denied, he filed a petition for writ of certiorari with the Colorado Supreme Court. The Colorado Supreme Court remanded the case to the court of appeals with an order to reinstate the trial court's judgment. 803 P.2d 144 (Colo.1990). Thomas moved for rehearing unsuccessfully with the Colorado Supreme Court. He then filed the habeas petition at issue here.

The issue here is whether the decision of the Colorado state trial court judge to admit the videotaped testimony of the child victims of sexual assault in lieu of live testimony, pursuant to Colo.Rev.Stat. § 18-3-413, deprived Thomas of his sixth amendment confrontation right. Both parties agree that this case is governed by *Maryland v. Craig*, — U.S. —, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990). As Thomas recognizes, a public policy of sufficient import may outweigh a defendant's right to confront witnesses at trial "where the reliability of the testimony is otherwise assured." *Craig*, — U.S. at —, 110 S.Ct. at 3166, 111 L.Ed.2d at 682.

The procedures used to videotape the depositions were the same for each child. The depositions were taken at a child abuse clinic. Each child was taken into a room with two therapists. The prosecution and Thomas each selected a therapist. In a separate room, the trial judge, a court reporter, Thomas and counsel assembled. They were able to see and hear the deposition through video and audio monitors, and a one-way mirror. They could communicate with the therapists by passing notes under the door. The prosecution's therapist questioned first. After the depositions were videotaped, counsel was given the opportunity to present objections on which the judge ruled. The tapes were then edited and presented to the jury at trial.

In his petition, Thomas claims that his confrontation right was violated by the admission of the videotapes because (1) "[t]he trial court erroneously found both children emotionally unavailable for trial and ordered counsel to arrange videotaping of the children," and (2) "[a]lthough defense counsel participated in devising the video procedure, counsel objected to the use of videotapes both prior to and subsequent to the taping." Petition at 2 ¶ 8. The first argument goes to the "important public policy" requirement of *Craig*, and the second goes to the reliability requirement of *Craig*.

### A. *Public Policy: Emotional Unavailability*

The Colorado statute at issue allows for the admission into evidence of videotaped testimony of a person under 15 years old who was the victim of sexual assault if the trial judge determines "that further testimony would cause the victim emotional trauma so that the victim is medically unavailable" for trial. Colo.Rev.Stat. § 18-3-413(4); *see* Colo.Rule of Evid. 804(b)(1) (former testimony). Under Colorado law, a child is medically unavailable when " 'the child's emotional or psychological health would be substantially impaired if [the child] were forced to testify and ... such impairment will be long standing rather than transitory in nature.' " *Thomas v. People*, 803 P.2d at 148 & n. 7, and 148–49 (Oct. 9, 1990) (modifications in original) (quoting *People v. Diefenderfer*, 784 P.2d 741, 750 (Colo.1989)).

Thomas argues that the trial court never established the unavailability of the two child witnesses. Essentially, Thomas contends that the trial court did not show that the videotaping served a sufficiently important public policy under *Craig*. Reviewing the conclusion of the trial court *de novo*, I disagree. *See Martinez v. Sullivan*, 881 F.2d 921, 925–26 (10th Cir.1989) (availability of witness is mixed question of law and fact reviewable *de novo* ), *cert. denied*, — U.S. —, 110 S.Ct. 740, 107 L.Ed.2d 758 (1990).

First, *Craig* itself stands for the proposition that Colorado's "interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." *Craig*, — U.S. at —, 110 S.Ct. at 3167, 111 L.Ed.2d at 683. Second, before admitting the videotapes into evi-

dence, the trial judge heard from experts who detailed the damage that testimony in front of Thomas would inflict on the child victims. After reviewing the excepts of the experts' statements, I agree with the Colorado Supreme Court's summarization:

> In this case, the [trial] court's findings were based on uncontradicted testimony of experts who had interviewed the children. Jane Pequette, a clinical psychologist, stated that testifying in open court, in front of the defendant would cause L.T. [one of the victims] severe and long-lasting emotional damage. Polly Mahoney, a social worker, testified that J.P. [the other victim] would be unpredictable in a courtroom setting and might suffer emotional damage. She described J.P.'s fear that the defendant would hear him telling people what the defendant had done to him. She said that J.P. was "terrified" at that prospect. She concluded that J.P. had "extraordinary fears" and unrealistic fantasies about being punished for testifying.

*Thomas,* 803 P.2d at 149 (footnotes omitted).

The evidence established that both child victims were medically unavailable and would be severely traumatized not by the courtroom environment, but from Thomas' presence during their testimony. *See Craig,* —— U.S. at ——, 110 S.Ct. at 3169, 111 L.Ed.2d at 685. Furthermore, although some of the experts' testimony was in general terms, the experts also spoke to the particular effects testimony before Thomas would have on the children. Consequently, I conclude, as did the trial court and the Colorado Supreme Court, that the evidence was sufficient to establish that Colorado had an important public policy interest in protecting these children from the harm that would result if they testified in front of Thomas.

### B. *Reliability*

Thomas argues that even if the children were medically unavailable at trial, their videotaped depositions were unreliable. He contends his confrontation rights were violated because (1) neither child was placed under oath; (2) counsel could not contemporaneously cross-examine; (3) counsel could not make contemporaneous objections because of the absence of the judge during portions of the videotaping; and (4) Thomas was not allowed in the room with the children during videotaping.

In evaluating the reliability of the hearsay statements, I presume that the factual findings of the Colorado state trial court are correct. 28 U.S.C. § 2254(d); *Sumner v. Mata,* 449 U.S. 539, 546–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1981). "However, the conclusion ... that the hearsay statements are reliable is a mixed question of law and fact, and hence is reviewed *de novo.*" *Myatt v. Hannigan,* 910 F.2d 680, 685 (10th Cir.1990); *see Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1055 (6th Cir.1983), *cert. denied,* 464 U.S. 1071, 104 S.Ct. 980, 79 L.Ed.2d 217 (1984).

The first objection, that the children were not placed under oath, is unpersuasive. Although the children did not receive an oath in the same verbiage as that normally administered to competent adults, they each received its functional equivalent for their ages. At the beginning of each deposition, the children were asked if they understood and could explain the difference between telling the truth and lying. They did and they could. They were also told the importance of telling the truth. The oath assured that the children were competent to testify.

The second objection, that counsel could not contemporaneously cross-examine, is also without merit. Thomas was given the opportunity to cross-examine through a therapist of his choice. As conceded in the affidavit of Thomas' trial counsel, this arrangement was stipulated to by Thomas, and he selected his own therapist to interrogate the children. Hence, as in *Craig,* Thomas was able to communicate meaningfully with his chosen therapist during examination, and suggest questions. Although the communication was by electronic equipment in *Craig* and by written note here, the technological difference is insignificant. Furthermore, there is nothing in

the record to indicate that the cross-examination by the therapists was ineffective.

The third objection, that Thomas could not make contemporaneous objections during the portions of the videotaping when the judge was gone, is not supported by the record. Although it appears that the trial judge was absent for portions of the videotaping, Thomas was able to make objections to testimony at an editing session after the taping, out of the presence of the jury, and before admission into evidence. Moreover, Thomas does not identify any testimony in the videotapes which was admitted without an opportunity for him to object. Thus, although the testimony of the children here was videotaped and not, as in *Craig,* live, Thomas had an effective opportunity to present objections.

The fourth objection, that Thomas was not facially before the children during the videotaping, is devoid of merit. The very purpose for videotaping as opposed to live testimony is to protect the children from the harm done by Thomas' presence during their testimony. Thus, the defendant in *Craig,* along with the judge and jury, were also isolated from the child witness in a separate room. Furthermore, Thomas does not link his presence to reliability. Indeed, the testimony of the psychologists established that his presence would actually inhibit the children from telling the truth.

Thomas, his counsel, the judge, the prosecution, and the jury were able to view and hear both witnesses and their credibility could be fully and fairly tested and assessed through the videotape procedure used in this case. Consequently, I find and conclude that the videotaped depositions were reliable.

## II. MOTION TO VACATE STAY

Because I have denied the petition for habeas corpus, there is no longer a predicate for the stay. Consequently, I vacate my Order staying further state court proceedings.

Accordingly IT IS ORDERED that
(1) Mack Willie Thomas' Petition for a Writ of Habeas Corpus is DENIED and the Show Cause Order DISCHARGED;
(2) My Order of November 27, 1990 staying all Colorado state court proceedings is VACATED.