COLORADO COURT OF APPEALS                                    **2016COA126**

Court of Appeals No. 14CA0401
Boulder County District Court No. 13CR854
Honorable Patrick D. Butler, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michelle Ann Hebert,

Defendant-Appellant.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MÁRQUEZ*
Lichtenstein and Miller, JJ., concur

Announced September 8, 2016

Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Patrick R. Henson, Alternate Defense Counsel, Denver, Colorado, for
Defendant-Appellant


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶ 1     Defendant, Michelle Ann Hebert, appeals the judgment of conviction entered on jury verdicts finding her guilty of theft from an at-risk adult and several tax offenses.  Following our limited remand order directing the district court to make further findings about whether Hebert was entitled to appointed counsel at the time of trial, the district court made those findings.  We now address all of Hebert's appellate arguments and affirm her conviction.

## I. Background

¶ 2     According to the prosecution's evidence, Hebert convinced the victim, an elderly man, to give her many loans totaling several hundred thousand dollars and failed to pay back the loans.  The victim contacted the police, and the People initially charged Hebert with theft from an at-risk adult.

¶ 3     Hebert was appointed counsel from the Office of the Public Defender.  The same day that appointed counsel entered his appearance, the People moved to depose the victim pursuant to section 18-6.5-103.5, C.R.S. 2015 (allowing for depositions of at-risk adults in criminal cases).  Because the victim's health was failing, the People requested that he be deposed from his home via two-way video conference with both parties questioning him live

1

from the courtroom. Hebert's appointed counsel objected, arguing, among other things, that (1) allowing the deposition to occur via two-way video conference would violate Hebert's Sixth Amendment right to confront the victim face-to-face and (2) granting the motion would render his assistance to Hebert ineffective because he would not have enough time to prepare an effective cross-examination of the victim. The district court held a hearing and granted the motion, but ordered that the deposition not occur for another five weeks to give Hebert's appointed counsel time to prepare.

¶ 4     Six weeks after the district court granted the motion, the victim was placed under oath and deposed at home via two-way video conference, with both sides asking him questions from the courtroom. Hebert was also present in the courtroom. The deposition was recorded, and, because the victim died before trial, the video recording was admitted at trial.

¶ 5     After the deposition but before trial, Hebert retained private counsel to represent her. However, shortly thereafter, the People charged Hebert with the additional tax-related offenses. Hebert's counsel then moved to withdraw, and the court granted the motion.

Hebert requested appointed counsel, but the public defender's office determined that she was ineligible for appointed counsel.

¶ 6     Hebert represented herself at trial.  The jury found her guilty of all of the charged counts, and the district court entered a judgment of conviction and sentenced her accordingly.  She appealed, arguing that the district court erred by (1) failing to make its own findings about whether she was eligible for appointed counsel after her private counsel withdrew and (2) admitting the recording of the victim's deposition at trial.  As noted, we remanded the case to the district court with directions to make its own findings about Hebert's eligibility for substitute counsel, and we reserved addressing her argument about the deposition.  Now that the court has made the necessary findings, we address both issues — Hebert's eligibility for appointed counsel and the admission of the victim's deposition.

### II. Hebert Was Ineligible for Appointed Counsel

¶ 7     Hebert argues that the district court erred by determining on remand that she was ineligible for appointed counsel.  We disagree.

¶ 8     We review the court's decision for an abuse of discretion.  *See People v. Schupper,* 2014 COA 80M, ¶ 21.

¶ 9 It is the defendant's burden to prove indigency by a preponderance of the evidence. *Id.* at ¶ 34. When determining whether the defendant has met that burden, the district court should consider the defendant's complete financial situation, including any secreted assets. *Id.* at ¶ 26.

¶ 10 On remand, Hebert submitted her public defender application and her 2012 joint tax return. The district court reviewed Hebert's application for appointed counsel, dated November 2013, in which she stated that she had no income, three dependents, ten dollars in a savings account, $2500 in other assets, and was separating from her husband. The district court also reviewed her 2012 tax return, dated April 2013, which showed that Hebert and her husband filed a joint return and reported their total income as $76,051. Finally, the district court considered Hebert's and her husband's testimony at sentencing, which took place in January 2014. At that time, the district court asked Hebert's husband how many times he and Hebert had separated. He replied that they had never been separated. Indeed, Hebert subsequently explained to the court that the only reason that she had indicated on her application for appointed counsel that she and her husband were separating was

so that she would qualify for appointed counsel. Considering all of this evidence, the district court determined that Hebert was ineligible for appointed counsel at the time of her November 2013 application.

¶ 11 Hebert argues on appeal that the district court abused its discretion by failing to credit her statement in her application that she was separating from her husband. She argues that because they were separating, she no longer had access to his income and was, in fact, indigent.

¶ 12 But it is the district court that determines the probative effect and weight of the evidence. *Id.* at ¶ 27. And in doing so here, the district court determined that regardless of Hebert's representations in her application, Hebert's and her husband's testimony at sentencing constituted evidence that they had never separated. On this evidence, the district court determined that their combined income of $76,051 rendered Hebert ineligible for appointed counsel. We conclude that the district court's findings were supported by the evidence, and we therefore perceive no abuse of discretion in its determination that Hebert was not indigent and did not qualify for appointed counsel.

## III. Admission of Previously Recorded Two-Way Video Deposition

### A. Fair Trial

¶ 13   Hebert contends she was denied the right to a fair trial when the district court admitted the victim's video deposition testimony without adequate time for defense counsel to prepare for the examination. We perceive no error in the court's ruling.

¶ 14   In June 2013, Hebert's counsel argued the People's request to depose the victim was premature, he had not been given the opportunity to properly review discovery, and his preparation for the deposition would be ineffective.

¶ 15   The court ordered that the hearing be delayed until August 2013 to give the defense sufficient time to prepare. The court conducted the deposition via two-way video conference on August 8, 2013. Defendant was represented by counsel who cross-examined the victim.

¶ 16   In our view, providing additional time to prepare was a proper response to counsel's concerns, and Hebert was not denied the right to a fair trial.

## B. Confrontation Right

¶ 17    Hebert also argues that admitting the video recording of the victim's deposition violated her Sixth Amendment confrontation right because she was unable to confront the victim face-to-face at the deposition. She has asserted, in a perfunctory manner, a violation of her confrontation right under the Colorado Constitution, but has not developed any analysis or argument under the state constitutional standard either before the district court or on appeal. We will therefore not engage in an independent analysis of this assertion. *See People v. Hill*, 228 P.3d 171, 176-77 (Colo. App. 2009) (declining to address conclusory assertion that defendant's confrontation right was violated). Instead, we review the Sixth Amendment confrontation argument de novo, *see People v. Merritt*, 2014 COA 124, ¶ 25, and disagree with Hebert.

¶ 18    The Sixth Amendment provides all criminal defendants with the right to confront witnesses who testify against them at trial. U.S. Const. amend. VI. The combined effect of the elements of confrontation — the physical presence of the witness, the testimony being given under oath, the defendant's opportunity to cross-examine the witness, and the fact finder's ability to observe

the witness's demeanor — ensures compliance with the Sixth Amendment and that the admitted evidence is reliable. *See Maryland v. Craig*, 497 U.S. 836, 846 (1990). Ordinarily, the physical presence element of confrontation includes the right to a face-to-face meeting with prosecution witnesses when they testify. *See id.* at 844.

¶ 19 But the Supreme Court has made clear that a defendant's right to confront witnesses face-to-face is not absolute. *Id.* In *Craig*, the Court addressed the constitutionality of receiving a child victim's testimony via live video from a separate location in which the defendant was not present. *Id.* at 841-42. The Court explained that the Sixth Amendment "reflects a *preference* for face-to-face confrontation at trial . . . that must occasionally give way to considerations of public policy and the necessities of the case." *Id.* at 849 (citations omitted). In these situations, the absence of a face-to-face confrontation at trial does not violate a defendant's confrontation rights if the "denial of such confrontation is necessary to further an important public policy and . . . the reliability of the testimony is otherwise assured." *Id.* at 850.

¶ 20    The at-risk adult deposition statute provides that in "any case in which a defendant is charged with a crime against an at-risk adult . . . the prosecution may file a motion with the court at any time prior to commencement of the trial, for an order that a deposition be taken of the testimony of the victim . . . and that the deposition be recorded and preserved on video tape." § 18-6.5-103.5(1).  If the court grants the request and the deposition occurs, the court may admit the video at trial if "the court finds that the victim . . . is medically unavailable or otherwise unavailable within the meaning of rule 804(a) of the Colorado rules of evidence."  § 18-6.5-103.5(4).  Hebert does not allege that taking or admitting the deposition of the victim here violated this statute.

¶ 21    We are aware of no Colorado appellate court opinion addressing the circumstances under which admitting a video recording of a deposition of an at-risk adult victim, conducted via a two-way video conference, would violate a defendant's confrontation rights.  However, other jurisdictions have examined live video conference testimony for confrontation violations under the analysis set out in *Craig.  See, e.g., Rivera v. State,* 381 S.W.3d 710, 713 (Tex. App. 2012).  And our supreme court has held that the

9

confrontation concerns and analysis articulated in *Craig* apply equally to live video testimony and previously recorded video testimony. *See Thomas v. People*, 803 P.2d 144, 151 (Colo. 1990) (addressing confrontation right implications of previously recorded video testimony that was preserved pursuant to the statute allowing videotape depositions of child sexual assault victims, section 18-3-413, C.R.S. 2015). Section 18-3-413 contains language similar to that in the at-risk adult statute.

¶ 22    We therefore apply *Craig* and *Thomas* to the circumstances of this case and conclude that admitting the video of the victim's deposition did not violate Hebert's confrontation rights because (1) the video conference procedure was necessary to protect the health of the victim and (2) the procedure ensured the reliability of the victim's testimony.

¶ 23    Before ordering the deposition, the district court reviewed two letters and an affidavit from the victim's doctor detailing his medical condition and the probable health effects of requiring him to testify in court or at home with Hebert physically present. The doctor wrote that the victim was currently in hospice care at home and his survival was measured in months. The doctor also wrote that

deposing the victim with Hebert physically present would cause a rise in the victim's blood pressure that, given his frail heart condition, could be fatal. Based on this evidence, the district court found that the victim was physically unavailable and a two-way video conference deposition was necessary. Indeed, the victim's health was so frail that he died in the four months between the deposition and trial. In light of this evidence, we agree with the district court's finding that conducting the deposition without Hebert physically present was necessary to protect the victim's health.

¶ 24     To the extent that the reliability of the victim's testimony might be an issue, the victim gave his deposition testimony under oath and was subjected to contemporaneous cross-examination by Hebert's counsel, and, because the video deposition was played at trial, the jury was able observe the victim's demeanor while testifying. *See Craig*, 497 U.S. at 846. Moreover, when permitting the deposition, the district court stated that it would ensure that there would be nobody in the room with the victim who, out of the view of the parties and the camera, could signal to him about how to testify during the deposition. *See Craig*, 497 U.S. at 850; *United*

*States v. Abu Ali,* 528 F.3d 210, 242 (4th Cir. 2008) (the defendant's confrontation rights were not violated by admission of previously recorded video of two-way videoconference depositions of foreign witnesses); *see also Thomas,* 803 P.2d at 151 (video of deposition of child sexual assault victim was reliable and therefore admissible when child was questioned (1) by one therapist approved by the prosecution and one therapist approved by the defense, (2) under oath, and (3) out of the defendant's presence with the attorneys and the defendant communicating with the therapists by passing them notes).

¶ 25     We also note that the victim's testimony was admissible under the Supreme Court's confrontation analysis in *Crawford v. Washington,* 541 U.S. 36 (2004).  In that case, the Court held that testimonial hearsay did not violate the Confrontation Clause as long as the declarant was unavailable and the defendant had a prior opportunity for cross-examination.  *Id.* at 68.  This appears to be a different confrontation standard than that articulated in *Craig.* Another division of this court has recognized the potential conflict between *Craig* and *Crawford* and has suggested that although the two opinions are not incompatible, the *Crawford* standard applies

12

to testimonial hearsay challenged under the federal confrontation right. *See People v. Phillips*, 2012 COA 176, ¶¶ 53-54, 78. We need not resolve any conflict that may exist between *Craig*'s and *Crawford*'s application to testimonial hearsay because, in addition to being admissible under *Craig* as discussed above, the victim's testimony also satisfied both of *Crawford*'s requirements: the victim was deceased at the time of trial and Hebert had a full opportunity to cross-examine him during the deposition.

¶ 26     We therefore conclude that admitting the two-way video deposition did not violate Hebert's Sixth Amendment confrontation rights.

## IV. Conclusion

¶ 27     The judgment of conviction is affirmed.

JUDGE LICHTENSTEIN and JUDGE MILLER concur.

13