## COMMONWEALTH *vs.* DAVID KIRKPATRICK.

Suffolk. May 7, 1996. - August 7, 1996.

Present: LIACOS, C.J., ABRAMS, GREANEY, & FRIED, JJ.

*Practice, Criminal,* Bill of particulars. *Due Process of Law,* Child abuse. *Rape. Child Abuse. Evidence,* Fresh complaint, Medical record.

In a criminal case in which the defendant was charged with ten identical undifferentiated counts of forcible rape of a child and ten identical undifferentiated counts of indecent assault and battery on a child under fourteen, the language of which tracked the statutory language of the offenses, the defendant did not demonstrate that he was unfairly prejudiced in his ability to prepare a defense by the indictments' lack of specificity as to date, time and detail and due process consideration did not require the prosecution to elect a specific act or acts on which to rely in proving a continuing pattern of abuse. [439-444]

At the trial of indictments for multiple acts of sexual abuse of a child sufficient evidence supported the jury's verdicts. [444]

At the trial of indictments for multiple acts of sexual abuse of a child, there was no error in the admission of the testimony of the last of five fresh complaint witnesses that barely went beyond the scope of the victim's testimony and that did not inject into the case a form of abuse which had not already been brought to the jury's attention and which was relatively insignificant to the Commonwealth's case. [444-445]

At the trial of indictments for sexual abuse of a child, the prosecutor's cross-examination of the victim's mother, called as a defense witness, was proper to show the witness's bias for the defendant. [445-447]

At the trial of indictments for rape and sexual abuse of a child the judge correctly excluded medical records of the victim offered to prove that she had not tested positive for sexually transmitted diseases that the defendant had been treated for during the time in question, where the records alone, without explanatory medical testimony, lacked probative value. [447-448]

INDICTMENTS found and returned in the Superior Court Department on April 9, 1992.

Pretrial motions to dismiss and for a bill of particulars were heard by *James P. Donohue,* J., and the cases were tried before *Thomas E. Connolly,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James M. Doyle* for the defendant.

*Kelly A. Downes,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury in the Superior Court convicted the defendant, David Kirkpatrick, on two indictments, the first charging ten identical counts of forcible rape of a child under sixteen years, in violation of G. L. c. 265, § 22A (1994 ed.), and the second charging ten identical counts of indecent assault and battery on a child under fourteen years, in violation of G. L. c. 265, § 13B (1994 ed.). The defendant is represented by new counsel on appeal. We transferred the case to this court on our own motion principally to consider the defendant's claim that his constitutional rights to due process of law[1] were violated because the prosecutor was unable, in the indictment, a bill of particulars, or through the victim's testimony, to provide any specific dates or other identifying characteristics for the multiple criminal acts which the defendant was alleged to have committed over a span of two years. We conclude that the defendant's rights were not violated, and that his motions for a required finding of not guilty and to dismiss the indictments properly were denied. We also conclude that there was no error as to the other issues argued by the defendant on appeal concerning the sufficiency of the evidence to support the convictions; the admission of fresh complaint testimony beyond the scope of abuse testified to by the victim; the admission of testimony about the actions of the Department of Social Services (DSS); and the exclusion of medical records of the victim and the defendant offered by the defendant. Accordingly, we affirm the convictions. We note, however, that as to the admission of medical records, the defendant may wish to pursue a motion for a new trial.

1. *Trial testimony.* The female victim was twelve years old at the time of trial and was between the ages of nine and eleven years in 1989 through 1991, when the incidents that gave rise to the indictments were said to have occurred. The victim lived for the greater part of this two-year period with her mother and the defendant, the mother's boy friend (and,

---

[1]In addition to the Fourteenth Amendment to the United States Constitution, the defendant relies on art. 12 of the Declaration of Rights to the Massachusetts Constitution. He does not contend, however, that the State Constitution affords him greater protection than is provided by the Fourteenth Amendment.

subsequently, her husband). The victim testified that approximately three times a week during the two-year period, when her mother and her older sister were either away from the family's apartment or asleep, the defendant would do one or more of the following: fondle or lick her chest area and vagina; masturbate and ejaculate on her stomach; force her to masturbate him; force her to engage in oral sex; or force her to have sexual intercourse with him. The victim was, however, uncertain and to some degree contradictory about the frequency with which certain acts had occurred, testifying at one point that vaginal intercourse occurred less frequently than fondling, and that it would not happen most of the time, although she also testified that it occurred as often as twice a week. The victim testified that she sometimes protested and "would not let him do it," that the defendant sometimes threatened to "get the belt" if she did not submit to his demands, and that the threats made her feel that the defendant wanted to beat her up as he did her mother. There was evidence that the defendant had violent altercations with the victim's mother, but, with one exception, no evidence that he had physically abused the victim in any other respect than stated in this opinion.[2]

The victim also testified that her mother had entered the room while the defendant was on top of her the first time the defendant forced sexual intercourse on her, and that she had told both her mother and her sister something about the abuse. The victim's testimony was supported by the testimony of five fresh complaint witnesses, including a neighbor, two social worker-investigators employed by the DSS, an aunt, and a police officer. The Commonwealth offered no medical evidence.

The defendant's case was aimed at impugning the credibility of the victim. Defense counsel elicited testimony from the victim's mother, who denied having seen, or hearing about, any sexual abuse of the victim by the defendant, and from the victim's sister, who said that the victim had told her about one incident of indecent exposure, but had never disclosed any other form of sexual abuse. The defendant did not take the stand.

---

[2]The defendant once slapped the victim in the face so hard that the blow left marks. There was testimony that this occurred when she had been playing with boys of whom the defendant did not approve and had broken some glasses.

2. *Specificity of charges.* As has been mentioned, two indictments were returned against the defendant. The first indictment contained ten identically worded counts which tracked the statutory language of G. L. c. 265, § 22A (forcible rape of a child) as follows:

> "DAVID KIRKPATRICK, on a day between 1989 and 1991, the exact date being unknown to the said GRAND JURORS, did assault [the victim], a child under the age of sixteen years, with intent to unlawfully have sexual intercourse with and abuse said [victim] and did unlawfully have sexual intercourse with and abuse said [victim], the said David Kirkpatrick having compelled the said [victim] to submit to such sexual intercourse by force and threat of bodily injury, against her will."

The second indictment contained ten identically worded counts which tracked the statutory language of G. L. c. 265, § 13B (indecent assault and battery of a child), as follows:

> "DAVID KIRKPATRICK, on a day between 1989 and 1991, the exact date being unknown to the said GRAND JURORS, did commit an indecent assault and battery on [the victim], a child under the age of fourteen years."

The defendant moved for a bill of particulars (a procedure we recommended in *Commonwealth* v. *Hrycenko,* 417 Mass. 309, 313 [1994]), which motion was granted. The Commonwealth complied by filing a one-page response which incorporated by reference a police report and a transcript of the testimony before the grand jury. This material did not describe any incident of sexual abuse in detail, and provided only one exact date, on which, it was alleged, the defendant had committed an indecent assault and battery on the victim. The grand jury testimony of the victim described specific forms of abuse, and alleged that these had occurred two or three times a week during the two years she had lived with the defendant. The defendant then moved to dismiss the indictments on the basis that they were insufficient, as supplemented by the particulars. The judge denied the motion.

The defendant does not maintain that the Commonwealth

withheld information. He assumes that the prosecutor's response provided as much specificity as possible. He recognizes as well that the times and dates of the offenses are not elements of the crimes, see *Commonwealth* v. *King*, 387 Mass. 464, 467 (1982), and that a statutory form of indictment is constitutionally sufficient to charge a particular offense. See *Commonwealth* v. *Hrycenko, supra* at 313; *Commonwealth* v. *Robertson*, 408 Mass. 747, 749 (1990). Rather, he contends that the lack of specificity, what he referred to at trial as the "generic" nature of the victim's allegations, afforded him inadequate notice for the preparation of a defense, and that, in view of the victim's testimony, describing numerous but essentially undifferentiated acts of abuse, the jury could not have reached unanimous agreement on the acts underlying each of the twenty convictions. He suggests that, in a case involving a child complainant who alleges repeated, undifferentiated instances of abuse, due process requires that the Commonwealth elect and offer proof of specific acts on which to rely for conviction. In support of his position, the defendant relies on *Commonwealth* v. *Montanino*, 409 Mass. 500, 512 (1991), a child sexual abuse case in which we suggested that the Commonwealth might be required to specify the dates of the particular incidents underlying the charges against the defendant, and two cases decided by the Supreme Court of Colorado in which, the defendant states, that court has held "that the prosecution [is] required to elect specific acts upon which to rely for conviction in [child sexual abuse] cases presenting large numbers of indistinct instances." The Colorado cases on which the defendant relies are *Kogan* v. *People*, 756 P.2d 945 (Colo. 1988), and *People* v. *Estorga*, 200 Colo. 78 (1980).[3]

As the Supreme Court of California observed in a similar

---

[3]The Commonwealth's assertion that the defendant failed to preserve these issues for appellate review is disingenuous. Prior to trial, the defendant moved for a bill of particulars. After he received the Commonwealth's response to his motion, which is described in the body of this opinion, he moved to dismiss the indictments. The defendant's objection was not that the Commonwealth had failed to disclose information in its possession, a point which might have been remedied by a second motion requesting greater particularity, see *Commonwealth* v. *Daughtry*, 417 Mass. 136, 142 (1994), but that the information — the precise nature of the abuse alleged and the dates on which it had occurred — could not be provided because the Commonwealth's only substantive witness was unable to be precise. The defendant reiterated this assertion, by various motions, throughout the

case, we are presented here with questions about "the extent to which the defendant's due process rights are implicated by the inability of [a] young accuser to give specific details regarding the time, place and circumstances of various alleged assaults. Frequently . . . these cases involve the so-called 'resident child molester' . . . who either lives with his victim or has continuous access to him or her. In such cases, the victim typically testifies to repeated acts of molestation occurring over a substantial period of time but, lacking any meaningful point of reference, is unable to furnish many specific details, dates or distinguishing characteristics as to individual acts or assaults." (Citation omitted.) *People* v. *Jones,* 51 Cal. 3d 294, 299 (1990). See also *State* v. *Brown,* 55 Wash. App. 738, 746-747 (1989).

In its carefully reasoned opinion in the *Jones* case, the Supreme Court of California rejected the contention, like that made by the defendant in this case, that the prosecution should be required to elect a particular act of abuse on which to proceed when a young child reports continuous abuse and is unable to isolate any, or many, particular occurrences. The court reasoned that a defendant receives adequate notice of the charges against him, and of the critical details of the Commonwealth's case, through the various pretrial proceedings and mandated discovery. The availability of this information obviates the risk of prejudice from unfair surprise at trial.

In *Jones,* the court rejected the argument that an alleged abuser who faces what the defendant referred to as "generic" testimony of abuse is precluded for this reason from presenting a defense. The court noted that, in the case of a resident abuser, as opposed to someone with episodic or limited access to a child, "only infrequently can an alibi or identity defense be raised." *Id.* at 319. In our case, the defendant's witnesses, the victim's mother and sister, offered testimony that defeated any possible suggestion of alibi. By her own admission, the victim's mother was drinking heavily during the relevant period, and the victim's older sister was only sporadically at the family's apartment. The defense centered on the credibility of the victim's allegations, and the defendant exploited the lack

trial. The defendant could not have done more to ensure that the issues were properly preserved. See *Commonwealth* v. *Barbosa,* 421 Mass. 547, 553 (1995).

of specificity by demonstrating on cross-examination that, apart from her account of abuse, the victim was able to remember and articulate quite detailed information about events in her life and to link these events to particular points in time. The defendant has not contended that his defense would have been different had the victim been able to be more precise about the dates and times of the assaults. Thus, we do not find persuasive the contention that the defendant was unfairly prejudiced in his ability to prepare his defense. See *Commonwealth* v. *King, supra* at 468-469.

In *Commonwealth* v. *Conefrey,* 420 Mass. 508 (1995), we reiterated "that the jury verdict in a criminal trial in this Commonwealth must be unanimous." *Id.* at 511, quoting *Commonwealth* v. *Hebert,* 379 Mass. 752, 754 (1980). The unanimity requirement is related to the requirement that the Commonwealth prove its case beyond a reasonable doubt: when all jurors agree on a defendant's guilt, their agreement indicates that the government has satisfied its burden of proof. *Id.* at 512 n.7. The *Conefrey* case, another case of sexual abuse of a child, stands for the proposition that, when the Commonwealth introduces at trial evidence of alternate incidents that could support the charge against the defendant, the jury must unanimously agree on which specific act constitutes the offense charged.

The court in *Jones* acknowledged the constitutional requirement of jury unanimity. Nonetheless, for reasons we find persuasive, the court rejected "the contention that jury unanimity is necessarily unattainable where testimony regarding repeated identical offenses is presented in child molestation cases." *People* v. *Jones, supra* at 321. The court noted that when, in a case of this kind, the decisive issue at trial is the credibility of the complainant, a jury will either believe that a consistent and repetitive pattern of abuse has occurred, of necessity encompassing a number of discrete acts, or they will disbelieve it. Because, in a case of this kind, a jury are not offered a choice between discrete incidents of abuse to support a single charge, the risk of a lack of unanimity that we identified in the *Conefrey* case does not exist.

Contrary to the defendant's contention, the Supreme Court of Colorado also has held that the prosecution is not required to elect and prove a single instance of abuse when a young victim gives evidence of a continuing pattern of abuse and is

unable to isolate specific acts by date and time. In *Thomas* v. *People*, 803 P.2d 144 (Colo. 1990), in an opinion which discussed the *Estorga* and *Kogan* cases on which the defendant relies, the court observed that it had before it a case which "demonstrate[d] the difficulty of applying the specification requirement to certain cases involving evidence of a continuing pattern of sexual abuse of very young children." *Id*. at 152. The *Thomas* case involved allegations of abuse by the defendant of his daughter and a neighbor's young son. The children "provided detailed descriptions of particular sexual contacts but also spoke in generalities [and] [i]t was not clear how many different times those contacts took place." *Id*. Concluding that the prosecution could not have isolated and identified one or more sexual acts, the court in *Thomas* "adopt[ed] the reasoning of the California Supreme Court in *Jones* and [held] that when the evidence does not present a reasonable likelihood that jurors may disagree on which acts the defendant committed, the prosecution need not designate a particular instance [of abuse]." *Id*. at 153.

The victim's testimony in this case (which the jury found credible) clearly demonstrates the difficulty in requiring the Commonwealth to identify and focus on a particular instance of abuse. The victim did not identify discrete instances when particular acts took place, much less supply a list of dates and times. She provided reasonably detailed descriptions of various distinguishable forms of abuse but otherwise spoke largely in generalities. Her testimony, if believed, established that she had been the victim of a large number of criminal acts by the defendant, but it provided little basis for the prosecution to identify particular acts of abuse on which to focus its prosecution. Clearly, the rule proposed by the defendant, which would have limited or foreclosed prosecution in this case,[4] might effectively insulate the most egregious offenders from prosecution. Following the Supreme Courts of Califor-

---

[4]Charging the defendant with ten counts in each indictment was a somewhat arbitrary decision by the prosecution. While requiring the prosecutor to select a few discrete instances of abuse would diminish the severity of the allegations against the defendant, there is a risk of prosecutorial overreaching. Quite wisely, some jurisdictions have guarded against this risk by defining a continuing course of child sexual abuse as a separate felony. See *People* v. *Jones*, 51 Cal. 3d 294, 310 (1990) (referencing Cal. Penal Code § 288.5 [West 1996] which defines offense of "continuous abuse of a child"). See also "Bill Would Make Prosecution of Abusive Pedophiles Easier,"

nia and Colorado, we also conclude that when the evidence does not create the risk that jurors will "reach a nonunaimous verdict," *Commonwealth* v. *Conefrey, supra* at 514, the guarantee of due process does not require that the Commonwealth attempt the artificial task of identifying a specific instance of abuse as a basis for conviction.

3. *Sufficiency of the evidence.* The victim's testimony, viewed in the light most favorable to the Commonwealth, see *Commonwealth* v. *Williams,* 422 Mass. 111, 122 (1996), adequately supported the jury's verdicts. See *People* v. *Jones, supra* at 314 (testimony of intercourse twice a week for two years outlines series of specific, albeit undifferentiated, acts each of which is separate offense). The victim very clearly distinguished between acts of indecent touching and acts of rape. She testified that the abuse commenced with indecent touching before it escalated to rape. Given the nature of the testimony, there was no risk that the jury could have found the defendant guilty of indecent assaults so closely related in time to the rapes as to constitute a single offense. There was sufficient evidence that the victim's submission to intercourse was obtained by force and threat of bodily injury, as required by G. L. c. 265, § 22A. The victim was nine years old when the defendant, an adult resident of her home who was sometimes violent and who had threatened her with "the belt," began abusing her. She did not immediately disclose the abuse in part because she "was scared." The Commonwealth was not required to prove that the defendant renewed his threats of physical harm every time he approached the victim to establish that the rapes were accomplished by force and against the victim's will. See *Commonwealth* v. *Caracciola,* 409 Mass. 648, 650-656 (1991); *Commonwealth* v. *Lewandowski,* 22 Mass. App. Ct. 148, 149-150 (1986).

4. *Fresh complaint testimony.* Of the five fresh complaint witnesses called by the Commonwealth, four stayed clearly within the bounds of the victim's testimony, see *Commonwealth* v. *Flebotte,* 417 Mass. 348, 351 (1994), and the defendant makes no specific objection about the Common-

N.Y. Times, June 3, 1996, at B2 (legislation would create new violent offense for persons who repeatedly have sex with children under eleven years of age).

wealth's reliance on their testimony.[5] He objects, however, to the content of the testimony of the final fresh complaint witness, a police officer who interviewed the victim on January 24, 1992, and who testified that the victim had said that the defendant "once performed anal sex on her." The victim testified to what was, at the least, an attempt at anal intercourse.[6] The officer's fresh complaint testimony barely went beyond the scope of the victim's testimony, see *supra,* note 5, and did not inject into the case a form of abuse that had not already been brought to the attention of the jury. In the circumstances of this case, where a single possible instance of anal penetration was relatively insignificant to the Commonwealth's case, there was no error in the admission of the testimony. Contrast *Commonwealth* v. *Flebotte, supra* at 351-352.[7]

5. *Testimony about DSS activities.* Two social worker-

---

[5]The jury were instructed twice during trial about the limitations on their consideration of fresh complaint testimony, and the judge repeated this instruction during his final charge. The instruction given on this point was complete and accurate.

Although he does not fully develop the argument, the defendant suggests that the judge permitted testimony from an excessive number of fresh complaint witnesses. "[T]here is no per se rule of how many fresh complaint witnesses may testify." *Commonwealth* v. *Trowbridge,* 419 Mass. 750, 761 (1995). As we have already noted, the jury were repeatedly instructed about the proper use of fresh complaint testimony. With one possible exception discussed in the body of this opinion, no fresh complaint witness testified to abuse that had not previously been described by the victim. For the most part, the victim had been reticent about the abuse, so the witnesses' testimony was not unduly repetitious, and did not furnish inflammatory detail. There was no error in the admission of the testimony.

[6]The victim became hesitant in her testimony when asked about what might be considered the most egregious forms of abuse visited on her. She apologized ("I don't know if I should say this") for saying that the defendant had forced her to masturbate him. At one point, asked what else the defendant would do to her about three times a week, the victim replied: "Well he would — he would make me — he would make — well he would make me put his penis in my mouth. But I — I wouldn't let him. She also testified that the defendant had touched her "[i]n [her] rear end" with his penis, but she wouldn't let him "put it inside of [her] rear end." She said that he sat behind her on the couch and pushed her back and forth, but she resisted as he tried to pull her towards him. Arguably, the victim's testimony described penetration.

[7]The defendant contends that error in admitting the testimony was compounded by the prosecutor's closing argument, in which she referred repeatedly to an instance of anal rape. For the most part, the prosecutor

investigators employed by the DSS testified as fresh complaint witnesses during the Commonwealth's case-in-chief, without objection on this basis by the defendant. On direct examination during the defense case, the victim's mother testified that she moved to Washington, D.C., sometime in 1991 because her mother "had" her older daughter, the DSS was going to take the victim, and she wanted to be with the defendant. On cross-examination, to demonstrate the bias of this witness, the prosecutor asked whether the DSS had taken the victim from her mother "due to neglect and the sexual abuse by [the defendant]." The witness answered "Yes."

Despite the numerous preceding references to DSS involvement in the case, which came without objection or at the defendant's own behest, the defendant suggests that this last exchange was fatally prejudicial because the jury would have considered this admission by the victim's mother tantamount to "an institutional determination of the credibilility" of the victim by a government agency with expertise on the question of child sexual abuse. The defendant's argument assumes far too much; namely, that, without any testimony on the subject, the jury would have been sufficiently familiar with the process of a DSS investigation to draw from this single remark the conclusions that he contends they almost certainly would have drawn.

The defendant called the victim's mother, fully aware that she was open to attack as a witness on the basis of her bias in favor of the defendant, demonstrated by the fact that she had married him after credible assertions of sexual abuse of the victim had been made against him. The Commonwealth was entitled to cross-examine the witness to demonstrate bias. See

rehearsed for the jury the content of the victim's various statements to fresh complaint witnesses, suggesting that variations in those statements reflected the circumstances in which the statements had been made. Since testimony on those statements was admitted as bearing on the victim's credibility, this was a permissible argument. The prosecutor made a single reference to anal rape (to which the defendant objected). The prosecutor in fact paraphrased a portion of the victim's testimony on this point and had, as we have previously noted, a reasonable basis for believing that the complainant had testified to anal penetration (he touched me *"in"* my rear end with his penis). The jury were instructed that counsel's argument was not evidence, and that their memory of the testimony was controlling. There was no error in this respect. There also was no error in the judge's instruction on the elements of rape. As the judge recognized, the victim's testimony permitted the jury to find rape by forcible unnatural intercourse.

generally P.J. Liacos, Massachusetts Evidence § 6.8, at 289-295 (6th ed. 1994).

6. *Admissibility of medical records.* Defense counsel opened his case by attempting to offer in evidence (1) medical records of the defendant to prove that during part of the period when, according to the victim, he had had frequent vaginal intercourse with her, he had been treated for gonorrhea and chlamydia (both sexually transmitted infections), and (2) medical records of the victim to demonstrate that she had tested negative for these infections. No objection was made to admission of the records on the grounds of authenticity. Having ascertained that the defense did not intend to offer explanatory medical testimony from a qualified witness, the judge excluded the records on the ground that, in the absence of proper accompanying testimony, admission of the records would have required the jury to speculate about the likelihood of transmission.

We have examined the records in question. The defendant's records, which included a copy of a letter from his physician to him, would have permitted a jury to conclude that the defendant had an active case of gonorrhea around November, 1989, and that this infection presented some risk of transmission to a sexual partner. The victim's medical records, as well as her testimony on cross-examination, might have warranted the conclusion that she had not suffered from a sexually transmitted infection during the relevant period.[8]

We do not doubt the possible relevance and probative value of evidence that a perpetrator of sexual abuse suffered from an active case of a sexually transmissible disease during the period when the acts of abuse were occurring, while an alleged victim did not. Cf. *Commonwealth* v. *Nylander*, 26 Mass. App. Ct. 784, 786-787 (1989) (diagnosis of gonorrhea in perpetrator and victim probative on occurrence of abuse). Nonetheless, the material in these medical records is not self-explanatory. In the absence of accompanying medical testimony, the jury could only have speculated about the

---

[8]On cross-examination, defense counsel elicited testimony from the victim that she had been tested for gonorrhea in January, 1992, and that the tests were negative. The victim's medical records are difficult to decipher, and we do not think that a jury, unaided by testimony from a medically knowledgeable witness, could draw any conclusions from them without speculating.

likelihood of transmission. Jurors could not have been expected to know for what period of time the defendant would have been contagious. They could not have been expected to know the frequency of transmission arising from genital-to-genital contact. Finally, they could not be expected to be aware of the reliability or conclusiveness of testing for infection in a child.[9] We agree with the judge that the records left unanswered so many crucial questions that, by themselves, they lacked probative value. In these circumstances, their exclusion from evidence was proper, and does not provide grounds for a reversal of the verdicts.

We leave for a possible motion for a new trial the question whether the defendant's trial counsel might have been ineffective in a constitutional sense in failing to obtain an expert witness qualified to testify about any conclusions which could be drawn from the medical records of the defendant and the victim. The defendant's pretrial motion for funds to hire an expert medical witness had been granted. The record does not indicate why the funds were not used. The medical records undoubtedly raise serious questions, bearing directly on the defendant's guilt, that would need to be explored in an evidentiary hearing. See *Commonwealth* v. *Licata*, 412 Mass. 654, 660-661 (1992); *Commonwealth* v. *Rosado*, 408 Mass. 561, 568 (1990). The defendant has not raised this issue in his direct appeal, nor, as we have explained, is the record sufficient for its resolution.

7. *Conclusion.* The defendant's convictions are affirmed.

*So ordered.*

---

[9]The victim's medical records contain notations of visual observations by medical personnel of symptoms consistent with gonorrhea.