Commonwealth *vs.* Joseph LaCaprucia.

Hampden. February 5, 1999. - April 27, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Child Abuse. Rape. Indecent Assault and Battery. Constitutional Law,* Double jeopardy. *Practice, Criminal,* Double jeopardy, Indictment, Lesser included offense, Bill of particulars.

Principles of double jeopardy did not bar the retrial of certain indictments where review of the record of the first trial demonstrated no uncertainty about the jury's verdicts of guilty and not guilty with respect to certain identifiable conduct, and where the defendant demonstrated no prejudice arising from the course of the first trial [445-452]; however, with respect to certain other remaining indictments, where it was impossible to determine the conduct for which the jury had convicted and for which they had acquitted, the indictments were properly dismissed and could not be retried [453].

Identically worded indictments, including a "clarification" filed by the Commonwealth at the first trial in response to the defendant's motion for a bill of particulars and a bill of particulars filed before the second trial, were sufficient to inform the defendant of the conduct charged so as to allow him to prepare an adequate defense. [453-455]

Indictments found and returned in the Superior Court Department, seventeen on December 4, 1992, and two on July 21, 1993, respectively.

Following review by the Appeals Court, 41 Mass. App. Ct. 496 (1996), motions to dismiss and for reconsideration were heard by *Regina L. Quinlan,* J.

The Supreme Judicial Court granted an application for direct appellate review.

*Lori K. Odierna,* Assistant District Attorney (*Judy Zeprun Kalman,* Special Assistant District Attorney, with her) for the Commonwealth.

*John S. Ferrara* for the defendant.

Marshall, J. A grand jury indicted the defendant forty-three times for sexual crimes against his two children, a daughter and

a son.[1] A jury found him guilty on nineteen indictments. On appeal from the convictions, the Appeals Court reversed and remanded for a new trial. *Commonwealth* v. *LaCaprucia*, 41 Mass. App. Ct. 496 (1996). We denied the Commonwealth's application for further appellate review. *Commonwealth* v. *LaCaprucia*, 424 Mass. 1102 (1996).

Prior to retrial, the defendant moved to dismiss the remaining nineteen indictments. He asserted that it could not be determined for which conduct he had been found guilty and for which he had been acquitted or the indictments had been dismissed, and that a retrial would violate his rights protected by the double jeopardy clause of the Fifth Amendment to the United States Constitution and the cognate protections provided by State law. A judge in the Superior Court agreed on reconsideration and dismissed the remaining indictments. We allowed the Commonwealth's application for direct appellate review. We affirm the dismissal of certain of the indictments by the motion judge, and reverse the dismissal of the others.

1. *Prior proceedings.* It is necessary to describe the prior proceedings in some detail. On December 4, 1992, a Hampden County grand jury returned forty-one indictments against the defendant charging him with committing sexual crimes against his two children.[2] On July 21, 1993, another grand jury of the same county returned two additional indictments against the defendant, also for crimes against his two children.[3] On January 25, 1993, the defendant filed a motion for a bill of particulars. The Commonwealth responded by providing a document entitled "clarification of indictments,"[4] in which it listed indictments, many grouped together, with a brief description of the

---

[1]We use the pseudonyms adopted by the Appeals Court, Ashley and John, to refer to the defendant's children. *Commonwealth* v. *LaCaprucia*, 41 Mass. App. Ct. 496, 496 n.1 (1996).

[2]Thirty-two indictments charged the defendant with rape of a child in violation of G. L. c. 265, § 23. Three indictments charged the defendant with forcible rape of a child, in violation of G. L. c. 265, § 22A. Six indictments charged the defendant with indecent assault and battery of a minor in violation of G. L. c. 265, § 13B.

[3]These indictments charged the defendant with violating G. L. c. 272, § 29A (b), which prohibits posing or exhibiting a child in a state of nudity (pornography indictments).

[4]The clarification of indictments contains numerous errors. Five indictments were omitted from the clarification of indictments entirely (nos. 92-2889 and 92-2892 to 92-2895), while one indictment number was included twice (no. 92-2899), with the Commonwealth describing different victims and conduct

conduct the Commonwealth alleged supported each indictment.[5] The Commonwealth earlier had informed the defendant that it could not provide him with the precise dates and times of the alleged offenses.

The defendant's trial began in September, 1993. At the close of the evidence, the defendant moved for a required finding of not guilty on certain, but not all, of the indictments.[6] The judge allowed the motion in part and denied it in part, dismissing the first nineteen of the thirty-two numbered indictments charging rape of a child, and the last of the three indictments charging rape of a child by force. The judge's reason for dismissing the indictments based on their numerical order rather than by the conduct described in the clarification for each indictment is not clear. He seems to have reordered the indictment numbers to insulate the defendant from any prejudicial inference that the jury might draw from nonsequential indictment numbers.[7] The

alleged. One description was given without an accompanying indictment number. The clarification also reverses the gender of the victim assigned by the grand jury to two indictments arising out of an incident involving both children (nos. 92-2901 and 92-2902).

[5]Many of the descriptions were generic. For example, the Commonwealth "clarified" that two indictments charged that the defendant "touched and rubbed [Ashley's] breasts, vagina, or rear, and that the defendant touched and rubbed [John's] breasts, penis, or rear" on various dates between September 3, 1990, and September 2, 1991; ten indictments charged "oral rape, relating to [the defendant's] sucking [John's] penis when [John] was two years old."

[6]The defendant moved for a required finding of not guilty on twenty indictments charging rape or forcible rape of a child. He asserted that John had testified that the conduct suggesting eleven indictments charging the defendant with performing oral sex on John had occurred only once, and, accordingly, that all but the first indictment charging that offense should be dismissed. The defendant made the same argument for the conduct leading to indictments concerning John's performing oral sex on the defendant. The defendant also argued that, because the described acts supporting four other indictments all alleged rape of John, they should be dismissed because they would be "accounted for in the remaining charges."

[7]Later, during the jury deliberations, the judge told counsel:

"[W]hen I allowed the motion for required findings on thirteen [*sic*] of them, I began with the earliest indictment number . . . and then I think I allowed it as to eighteen [*sic*]. I went from [one number] to [another] without regards to the clarification of the indictment because I wanted there to be a series of indictments, a continuous, numerical sequence for the jury. I didn't want [the jury] to speculate about any reason for an unbroken series of numbers . . . ."

Commonwealth did not object, a source of the almost impenetrable confusion that followed.

During his charge, the judge attempted to provide a road map for the jury, linking his charge on specific crimes to particular indictments identified by number. He began by instructing that the offenses could be considered in three groups: rape of a child (with or without force); indecent assault and battery on a person under the age of fourteen years; and child pornography. He carefully described the elements of each crime. The judge also gave the jury a specific unanimity instruction.[8] Nevertheless, early during their deliberations, the jury asked how they could distinguish among identically worded indictments and verdict slips alleging rape of a child. Several colloquies occurred between the judge and counsel. During a lobby conference, the defense counsel stated that the indictments were "indistinguishable at this point to the extent that the indictments are not incident specific," and the Commonwealth suggested that the verdict slips be matched with descriptions of different rapes of the two children, perhaps described by orifice. The judge refused on the ground that doing so would be suggestive to the jury. The judge indicated that instead, he would respond to the jury's question in general terms only. He did so, but stressed again the need for the jury to reach unanimity on a specific incident for a guilty verdict on any indictment.[9] The next day, having reflected on the difficulty confronting the jury, the judge, with the assent

---

[8]The judge instructed the jury:

"Your verdict on all the indictments must be unanimous, whether it's for guilt or innocence, as to each indictment. In voting on each indictment, your vote must be based upon and focused upon the same act. For example, when voting on an indictment, a unanimous vote cannot be obtained if some of you are voting on, for instance, that there was a screwdriver that was used, and some of you are voting that the defendant's penis was used and some of you were voting that a tongue was used. You have to focus on a particular act. So if, for instance, you're discussing an indictment based upon unnatural sexual intercourse and I just say hypothetically the use of the screwdriver, the vote, whatever it is, must be unanimous, and it must be unanimous as to whether or not a screwdriver was used. It cannot be a mixture of incidents. It must be the same act that is voted on."

[9]The judge instructed:

of the Commonwealth and the defendant, instructed the jury to make notations on each verdict slip to "assist [the court] in knowing exactly what incident it was that you were voting on."[10]

After deliberating for three days, the jury returned a verdict of guilty on nineteen indictments.[11] They were unable to reach a verdict on three indictments,[12] and acquitted the defendant on one indictment.[13] Consistent with the judge's suggestion, the jury had made notations on the face of each verdict slip, identified by indictment number, of the conduct on which the jury had voted.[14]

---

"[I]n voting on an indictment, you must talk about the same incident, you must vote unanimously either guilty or not guilty as to whether or not a particular act occurred. And it's up to you to assign an indictment, a particular indictment, to a particular incident, and it's entirely up to you to do. If for instance, you find that there are more indictments than there are incidents, you obviously cannot come back with a guilty on one of those. . . . If in your collective recollection you found, for instance, there were eight incidents and there are thirteen indictments alleging rape of a child, then it should be easy for you to come up with nine, ten, eleven, twelve and thirteen because in your mind there was absolutely no evidence. . . . [Y]ou yourself will assign a particular indictment to the testimony about a particular act. It's up to you to do. It has not been done for you. The indictments are general in terms and they charge that a crime was committed without any specific reference in the indictment to any testimony or any particular incident. That's going to be up to you to do."

[10]The judge instructed the jurors to "put on the verdict slip the type of incident that you are considering for each slip, and . . . you might put some detail about that on the verdict slip to assist us in knowing exactly what incident it was that you were voting on."

[11]The defendant was found guilty on the two remaining indictments charging him with forcibly raping a child (nos. 92-2901 and 92-2902). He was found guilty on the only two pornography indictments (nos. 92-1233 and 92-1234). He was found guilty on all six indictments charging him with indecent assault and battery of a child. He was found guilty on nine of thirteen remaining indictments charging him with the rape of a child.

[12]All three indictments (nos. 92-2892, 92-2894, and 92-2899) on which the jury were unable to reach a verdict charged the defendant with rape of a child. With the assent of the Commonwealth, the trial judge dismissed these indictments rather than sending them back to the jury.

[13]The jury acquitted the defendant on one charge of rape of a child that they described on the verdict slip as the defendant "having anal intercourse with [John]."

[14]The descriptions were brief: "[the defendant] having intercourse with

After the Appeals Court reversed the defendant's convictions, *Commonwealth* v. *LaCaprucia,* 41 Mass. App. Ct. 496 (1996), the defendant moved to dismiss all of the remaining indictments on two grounds: the insufficiency of the indictments, and the risk of double jeopardy inherent in a retrial. The motion judge, who was not the trial judge, concluded that the defendant had waived any objection to the sufficiency of the indictments by failing to raise the issue before his first trial. She nevertheless ordered the Commonwealth to prepare a bill of particulars, and denied the defendant's motion without prejudice. On May 16, 1997, the Commonwealth filed a bill of particulars.[15] On July 14, 1997, the defendant moved for reconsideration of his motion to dismiss. The judge again denied his motion insofar as it sought reconsideration of his claim of the insufficiency of the indictments, but allowed the motion for all indictments with regard to the defendant's double jeopardy claim.

2. *Double jeopardy claim.* The constitutional prohibition against double jeopardy "protects against a second prosecution for the same offense after acquittal." *Justices of Boston Mun. Court* v. *Lydon,* 466 U.S. 294, 306 (1984).[16] In *Commonwealth* v. *Hrycenko,* 417 Mass. 309, 316-317 (1994), we considered a claim of double jeopardy similar to the one asserted here. In that case, the defendant had been indicted six times for aggravated rape. Each indictment was framed in identical language. A jury convicted him on two of the indictments and acquitted him on four. His convictions were reversed on appeal. Because it was "impossible" to determine on which allegations of rape the jury had acquitted him and on which they had

[Ashley]"; "[the defendant] having anal intercourse with [John]"; "[the defendant] [h]aving oral sex with [Ashley], [the defendant] being the perpetrator;" "[Ashley] being made to have oral sex with [the defendant]."

[15]The Commonwealth compounded the already confused record by filing a bill of particulars that it now claims contains "clerical" errors, misidentifying certain indictment numbers with the conduct described. The description of the conduct underlying some indictments contained in the bill of particulars also differs from the corresponding description in the clarification of indictments.

[16]Although we have never "explicitly stated that our Declaration of Rights includes a double jeopardy guarantee . . . protection against double jeopardy in this Commonwealth has long been part of the common law" (citation omitted). *Lydon* v. *Commonwealth,* 381 Mass. 356, 366, cert. denied, 449 U.S. 1065 (1980).

convicted him, we concluded that the defendant could not be retried. *Commonwealth* v. *Hrycenko, supra* at 316-317. We noted in that case that the protection against double jeopardy relates "to the *risk* that an accused will be convicted for the same offense on which he has already been tried" (emphasis added). *Id.* at 317, citing *Price* v. *Georgia,* 398 U.S. 323, 326 (1970). We therefore reviewed the entire record, including the grand jury proceedings, to ascertain whether there was any "uncertainty concerning the bases of the jury's acquittal and guilty verdicts at the first trial . . . ." *Id.* at 316. Recognizing that "the basic premise of the criminal law [is] that ambiguities and doubts are to be resolved in favor of the accused," *id.* at 317, quoting *Commonwealth* v. *Wilson,* 381 Mass. 90, 125 (1980), we concluded that, because the record was uncertain, the defendant could not be subjected to a retrial. *Id.* at 316-317.

In cases alleging continuous, ongoing sexual abuse of a young child, particularly by an abuser who lives with the child, information regarding specific dates and places of the criminal conduct is often impossible to ascertain, and selecting the number of incidents on which to charge a defendant is necessarily difficult. See *Commonwealth* v. *Kirkpatrick,* 423 Mass. 436, 441, cert. denied, 519 U.S. 1015 (1996). Some States have resolved this difficulty by enacting legislation describing ongoing abusive activity as a separate felony. See, e.g., *People* v. *Jones,* 51 Cal. 3d 294, 310 (1990) (Cal. Penal Code § 288.5 [West Supp. 1999], defining offense of "[c]ontinuous sexual abuse of a child").[17] Massachusetts has no such statute. The Commonwealth is not, however, foreclosed from obtaining convictions of defendants who have abused children over a period of time. See, e.g., *Commonwealth* v. *Kirkpatrick, supra*; *Commonwealth* v. *Hanlon,* 44 Mass. App. Ct. 810 (1998). But where the Commonwealth brings a number of indictments against a defendant alleging child sexual abuse occurring at unspecified times or places, there is always the risk that jurors may vote to find the defendant guilty on a particular indictment, but with different incidents or conduct in mind. A reviewing

---

[17]For other statutes providing for a single charge of continuous or multiple acts of abuse, see Ariz. Rev. Stat. Ann. § 13-1417 (West Supp. 1998); Colo. Rev. Stat. Ann. § 18-3-405(d) (West Supp. 1998); Del. Code Ann. tit. 11, § 778 (1995); Haw. Rev. Stat. § 707-733.5 (Supp. 1997); N.D. Cent. Code § 12.1-20-03.1 (1997); Wis. Stat. Ann. § 948.025 (West 1996). See also Phipps, Children, Adults, Sex and the Criminal Law: In Search of Reason, 22 Seton Hall Legis. J. 1, 49-51 (1997).

court may uphold a conviction in such a case only where the record is clear that the jurors "understood their duty unanimously to agree to a particular set of facts." *Commonwealth* v. *Conefrey*, 420 Mass. 508, 514 (1995). See *Commonwealth* v. *Kirkpatrick, supra* at 442 ("when the Commonwealth introduces at trial evidence of alternate incidents that could support the charge against the defendant, the jury must unanimously agree on which specific act constitutes the offense charged").

In this case because the judge "renumbered" the indictments and because the jurors made notations on each verdict slip, apparently without regard to the indictment numbers, it is not possible to match the conduct described in the "clarification" with the corresponding verdict slips. The Commonwealth takes the position that a retrial is not precluded because the indictment numbers do not control the content or substance of the indictment.[18] It notes that neither the Massachusetts Rules of Criminal Procedure nor any statute requires that an indictment be numbered at all. See Mass. R. Crim. P. 4 (a), 378 Mass. 849 (1979) ("An indictment . . . shall contain a caption as provided by law, together with the plain, concise description of the act which constitutes the crime or an appropriate legal term descriptive thereof"); G. L. c. 277, § 79 (annexed form does not include a number). See also *Commonwealth* v. *Bessette*, 345 Mass. 358, 360 (1963) (indictment in statutory form is usually sufficient as matter of criminal pleading). We accept that confusing the indictment numbers alone would not preclude a retrial of a defendant. Similarly, the trial judge's renumbering of the indictments, although inadvisable, would not necessarily prejudice a defendant. Rather, the inquiry must be on the substantive basis for the jury's decision; we must consider

---

[18]We reject the Commonwealth's argument that the defendant's actions at trial (failing to object as the record became increasingly confused) constituted a waiver of his double jeopardy claim. The defendant appropriately raised his claim of double jeopardy prior to the proceeding that would offend his protected rights. *Lydon* v. *Commonwealth, supra* at 360 n.7. It would be "unreasonable" to impose on him the responsibility to ensure that the record at his first trial clearly evidenced the conduct for which the jury convicted or acquitted him so that, "in the unlikely event that the jury later returns split verdicts on the indictments and, on appeal, the convictions are reversed and remanded for retrial, . . . the Commonwealth may then proceed to retrial unfettered by any concern of the bar of double jeopardy." *Commonwealth* v. *Hrycenko*, 417 Mass. 309, 317 (1994). See G. L. c. 263, § 7; *Chambers* v. *Commonwealth*, 421 Mass. 49, 52-54 (1995). That burden was on the Commonwealth.

whether the alleged conduct for which the grand jury indicted the defendant (as described to him in the "clarification"), the evidence, the charge, and the jury verdicts are sufficiently distinguishable to permit an understanding of the allegations on which the jury acquitted the defendant and on which they convicted him. *Commonwealth* v. *Hrycenko, supra* at 315.

In that respect the Commonwealth underestimates the problem confronted by the motion judge and with which we must now grapple. The record is opaque in significant relevant portions because of the Commonwealth's failure adequately to develop it. We recognize the difficulties in prosecuting cases alleging continuous crimes of abuse against young children. But the Commonwealth presented the motion judge with a morass of information that shed little or no light on the defendant's legal claims.[19] Nevertheless, based on our independent consideration of the entire record, we conclude that it is possible to retry the defendant on certain indictments because certain alleged conduct may be distinguished from other conduct of which the defendant was acquitted. We are also persuaded that the defendant otherwise has not been prejudiced by the course of proceedings to date with respect to those indictments. We describe the alleged conduct for which the defendant may be retried.

(a) *Posing or exhibiting a child in a state of nudity.*[20] The grand jury indicted the defendant on two charges of posing or exhibiting a child in a state of nudity in violation of G. L. c. 272, § 29A (b) (nos. 93-1233 and 93-1234). The Commonwealth "clarified" that these two indictments charged "that the defendant forced [Ashley] and [John] to perform sexual acts in front of him." Ashley testified that the defendant forced her to suck her brother's penis and forced her brother to suck her

---

[19]The motion judge correctly concluded that the Commonwealth had "not attempted to distinguish the incidents referred to by the jury on the verdict slips from the conduct of which the defendant was acquitted." In its brief to this court, the Commonwealth's citations to the record appendix are frequently inaccurate, making its claims difficult to evaluate.

[20]The Commonwealth argues that the defendant requested only that the indictments charging him with rape of a child and rape of a child by force be dismissed, and that he waived this claim with respect to all other indictments. It makes the same argument with respect to the motion for reconsideration brought by the defendant after the Commonwealth filed its bill of particulars. The argument is frivolous: in both motions, the defendant plainly requests that all of the remaining indictments against him be dismissed.

vagina while observed by her father. In response to the defendant's motion for required findings of not guilty, the trial judge ruled that "[t]wo indictments alleging pornography can both go to the jury." In his charge, the judge instructed the jury on the elements of pornography. He further concluded, "93-1233 and 1234 . . . those are the child pornography indictments."

The typed text on each of two verdict slips identified the indictments as "child pornography." The jury convicted the defendant of both charges, making a notation on both slips that the defendant was guilty of "observing and allowing [John] and [Ashley] to perform sexual acts on one another." The jury did not acquit the defendant on either charge of pornography.[21] The defendant may be retried on both pornography indictments.[22] At retrial, the evidence on these two indictments shall be limited to testimony concerning the children performing sexual acts on one another at his direction.

(b) *Forcible rape of a child.* The grand jury indicted the defendant on three charges of forcible rape (nos. 92-2901, 2902, and 2903). Numbers 92-2901, 92-2902, and 92-2903 charged the defendant with forcible rape of a child between March 5, 1990, and March 4, 1991. Number 92-2901 alleged that the victim was female, describing the conduct as against "her" will, and no. 92-2902 alleged that the victim was male.[23] The "clarification" described the underlying conduct of nos. 92-2901 and 92-2902 as the defendant forcing the two children "to

---

[21]We have identified one inconsistency in the record on the pornography charges: the grand jury indictment no. 93-1234 specifies that the conduct occurred in 1991; the "clarification" specified that the conduct occurred in 1992. The time of the offense is not an element of this crime. See G. L. c. 272, § 29A (*b*). The two child witnesses did not testify as to different time frames on the pornography charges. We conclude the error was clerical, and does not mandate a dismissal of these indictments. See G. L. c. 277, § 47A. Cf. *Commonwealth* v. *King*, 387 Mass. 464, 467 (1982) (where time of offense is not element of crime, it need not be precisely alleged). In any event, the defendant did not object to the clerical error.

[22]The defendant makes no particularized argument that the principles of double jeopardy preclude a retrial of the two indictments for pornography.

[23]A statement Ashley made to a police detective was entered in evidence before the grand jury. In it, Ashley described the defendant forcing the two children to engage in sexual activity on each other while he watched and beat them "with a belt the whole time."

lick each other while he beat them with belts."[24] There was no "clarification" of no. 92-2903.

At trial, Ashley testified that the defendant forced her to suck her brother's penis, and forced her brother to suck her vagina, while the defendant watched, and that if the children refused, he would "hurt us, like beat us." In response to the defendant's motion for required findings of not guilty, the judge concluded that two indictments charging rape of a child by force could go to the jury, one with John as the alleged victim, and the second with Ashley as the alleged victim, because there was evidence that the children "were required to perform oral sex upon one another under threats of being beaten." The judge dismissed the third indictment charging rape of a child by force "because the case was essentially presented to the jury — and the paperwork that I have other than the fact that there is a third indictment, all suggest two indictments for rape of a child with force."

The judge gave explicit instructions to the jury regarding the essential elements of rape of a child by force. He instructed that the two indictments charging rape of a child by force alleged that the defendant had forced Ashley and John to perform oral sex on one another and that "there was testimony that it was done under the force of certain beatings." Of those two, he explained, no. 92-2901 contemplated that John was the "victim" of the forcible rape, and no. 92-2902 contemplated that Ashley was the "victim" of the forcible rape. These were the only rape indictments on which the judge instructed that the Commonwealth alleged that the two children were performing sexual acts upon one another: "[T]he Commonwealth isn't saying that the defendant performed the sexual act upon the two children but rather he required the two children to perform sexual acts upon one another. If you find that the children performed sexual acts upon one another, in the nature of rape, as I have defined that for you, the penetration . . . and if you find . . . that such acts were done without the consent of either child, with force or violence, or threat of force or violence," the jury could convict the defendant. No other rape indictments, clarifications, or instructions to the jury describe the two children performing oral sexual acts on one another. The jury convicted the defendant on both indictments of forcible rape. He may be retried on both

---

[24]The "clarification" incorrectly identified the victim of no. 92-2901 as John and of no. 92-2902 as Ashley. We conclude this is a clerical error to which the defendant did not object. See note 21, *supra.*

of these indictments.[25] At the retrial, the evidence of the conduct on these indictments shall be limited to testimony concerning the two children performing sexual acts on one another in the presence of the defendant, including any evidence of beatings or other coercion the defendant inflicted or threatened while the children were engaged in such joint sexual activity.

(c) *Indecent assault and battery.* The grand jury indicted the defendant on six charges of indecent assault and battery on a child under the age of fourteen in violation of G. L. c. 265, § 13B.[26] The Commonwealth "clarified" that two indictments charged the defendant with touching John (his "breasts, penis, or rear"), and four of these indictments charged the defendant with touching Ashley (her "breasts, vagina, or rear") or having Ashley touch his penis. At trial, Ashley testified about the "Birdie" game.[27] The defendant did not move for a required finding of not guilty with respect to the indecent assault and battery indictments. Nevertheless, in the course of his ruling on a motion for required findings of not guilty on the rape charges, the judge said that three indictments charging indecent assault and battery of Ashley could go to the jury because "[t]here was testimony that [Ashley] . . . was touched in the area of her breasts on many occasions by her father. Also . . . there was testimony that she was required to touch her father's penis. She played the "Birdie" game, and that the defendant tied her to a bed with her [brother] and humped them. There was no evidence of penetration . . . ." In connection with that same ruling, the judge said he would permit three indictments charging indecent assault and battery of John to go to the jury[28] as there was

[25]As with the pornography indictments, the defendant makes no particularized argument that the principles of double jeopardy preclude a retrial of the two indictments charging the defendant with rape of a child by force.

[26]A statement made by Ashley to a police detective was entered in evidence before the grand jury. Ashley described a game played by her father called "Birdie": "Who got caught was the Birdie. The Birdie had to go into my father's room with my father. When I got caught he brought me in his room and touched my boobs. He caught . . . [John] a lot of times. My mom has walked in [*sic*] my father humping me many times."

[27]At trial, Ashley testified that "there was this game called the Birdie game" that she then described: "[W]hoever my father catches he humps. . . . [H]ump means when you put your penis between legs."

[28]As described in the "clarification," only two indictments for indecent assault and battery alleged that John was the victim. The defendant did not challenge this ruling.

testimony "that the defendant touched [John's] penis, touched his butt and tied him and his sister in a bed and humped them."

The judge instructed the jury on the elements of indecent assault and battery on a child under the age of fourteen years. He also identified the six indictments by number as alleging indecent assault and battery. The jury convicted the defendant of all six charges. The notations by the jury on four of the verdict slips are specific. Two describe the conduct as "Birdie Game with [Ashley], resulting in [Ashley's] touching private parts" of the defendant (nos. 92-2905 and 92-2908) and two described the conduct as "Birdie" game with John resulting in John's "touching private parts" of the defendant (nos. 92-2906 and 92-2907).

The defendant argues that, because indecent assault and battery is a lesser included offense of rape, *Commonwealth* v. *Walker*, 426 Mass. 301 (1997); *Commonwealth* v. *Egerton*, 396 Mass. 499, 503 n.3 (1986), the testimony of the two children with respect to various incidents merged the allegations of indecent assault and battery with those of rape. See *Commonwealth* v. *Sanchez*, 405 Mass. 369, 381-382 (1989), quoting *Commonwealth* v. *Thomas*, 401 Mass. 109, 120 (1987) (crime of indecent assault and battery and crime of rape of a child by force "so closely related in fact" as to constitute "in substance" single crime). Because he was acquitted of some charges of rape, the defendant continues, it cannot be discerned which testimony of indecent assault and battery was accepted and which rejected. Unlike *Sanchez*, it is possible in this case to distinguish between the testimony concerning the "Birdie" game and the testimony of all of the other alleged conduct concerning rape and indecent assault and battery. The evidence both before the grand jury and at trial concerning the "Birdie" game is specific. The defendant may be retried on these four indictments.[29] At retrial the evidence on the four indictments for indecent assault and battery shall be limited to testimony concerning the "Birdie" game, two occasions in which Ashley was the alleged victim, and two occasions in which John was the alleged victim. The testimony shall not include evidence of penetration by the defendant of either child.

---

[29]The notations by the jury on the remaining two indictments charging indecent assault and battery on a child under fourteen years are not specific and it is not possible to discern on which alleged conduct the jury acquitted the defendant and on which they convicted him. The defendant may not be retried on those two indictments (nos. 92-2904 and 92-2909).

(d) *The remaining indictments*. We affirm the dismissal of the remaining indictments. We need not describe with particularity why, with respect to each such indictment, it is impossible to determine for which alleged conduct the jury acquitted the defendant and for which conduct they convicted him. See *Commonwealth* v. *Hrycenko, supra* at 316-317. Despite the judge's invitation to the jury to clarify the conduct on which they were voting on each verdict slip, the notations with respect to the indictments charging rape of a child and to two of the indictments for indecent assault and battery are generic and do not provide sufficient guidance to permit one allegation to be distinguished from another. See note 14, *supra*. The motion judge reached the same conclusion. Contrary to the defendant's argument, the notations by the jurors on the verdict slips may be considered in evaluating the defendant's claim of double jeopardy.[30] But we agree with the defendant that where the notations on the verdict slips do not reliably identify the conduct that the jurors actually contemplated with respect to the indictment on which they voted, the notations must be ignored.

3. *Sufficiency of the indictments*. Before his first trial, the defendant filed a motion for a bill of particulars and accepted, in response, the Commonwealth's "clarification." Prior to the second trial, he moved to dismiss the remaining indictments, alleging that they failed to inform him of the "actual conduct charged" sufficient to prepare an adequate defense. The motion judge denied that aspect of his motion, concluding that he had waived the issue. He renews his argument on appeal.

The defendant concedes that he could not have made this claim prior to his first trial because the "clarification" of the Commonwealth cured any shortcomings of the identically worded indictments. See *Commonwealth* v. *Hrycenko, supra* at 313 ("identically-worded indictments are not defective if the defendant has the opportunity to obtain, through a bill of particulars, sufficient information to enable him to understand the charges against him and to prepare his defense"). See also

---

[30]The defendant relies on *Commonwealth* v. *Fidler*, 377 Mass. 192, 198 (1979), in which we held that a verdict may not be impeached by "evidence concerning the subjective mental processes of jurors, such as the reasons for their decisions." That holding pertains to the use of postverdict interrogation of jurors by litigants or by counsel. In this case the judge sought clarification from the jury contemporaneously with the return of the verdicts. The notations do not concern "the reasons for [the jurors'] decisions." *Id*. They merely describe the conduct on which the jurors voted.

G. L. c. 277, § 34.[31] He argues, however, that in "the unique circumstances" of this case, the indictments are "no longer" sufficient to advise him, the prospective trial judge, or prospective jurors of the conduct charged in the remaining indictments. The "unique" circumstance to which he refers is the confusion at his first trial concerning the indictments, clarification, and verdict slips that we described earlier, now compounded by "clerical" errors contained in the bill of particulars filed by the Commonwealth after the defendant's convictions were reversed.

The Commonwealth did not respond substantively to this claim. It moved to strike this argument because the defendant did not take an appeal from the judge's ruling, and because the Commonwealth prevailed with respect to this aspect of the defendant's claim before the motion judge. We reach the issue for reasons of judicial economy: this issue necessarily is intertwined with the defendant's claim of double jeopardy and must be resolved before a retrial.[32] See *Commonwealth* v. *Hrycenko, supra* at 315 n.7.

Addressing the defendant's claim that the identically worded indictments are *no longer* sufficient, the motion judge concluded that "[a]lthough the defendant elected to accept the Clarification in lieu of a Bill of Particulars, he was given all of the essential facts which he would have received from a formal Bill of Particulars to enable him to understand the charges against him and prepare a defense." Although far from perfect, the "clarification" was sufficient to guide the defendant in the preparation of his defense for his first trial: he made no claim at that time that the indictments were insufficient. See *Commonwealth* v. *Kirkpatrick, supra* at 442. At his second trial, the defendant will now have available to him all of the trial testimony concerning the remaining indictments. This will enable him to prepare a defense, and inform the prospective trial

---

[31]General Laws c. 277, § 34, provides: "An indictment shall not be dismissed or be considered defective or insufficient if it is sufficient to enable the defendant to understand the charge and to prepare his defense; nor shall it be considered defective or insufficient for lack of any description or information which might be obtained by requiring a bill of particulars."

[32]We are cognizant of the extraordinary toll that lengthy and convoluted judicial proceedings exact on child victims. At the time of trial, in 1993, Ashley was ten, and John was five years old. They will be required to testify again before these most serious charges against their father can be resolved. In these circumstances it is incumbent on us to ensure that the proceedings move forward expeditiously.

judge of the evidence that will be admissible. See *Commonwealth* v. *Montanino*, 409 Mass. 500, 513 (1991) (where alleged victim testified at first trial, providing particulars of dates of crimes alleged, defendant could utilize this "new information" not provided in indictments to prepare his defense at second trial). To the extent that the defendant can demonstrate that the Commonwealth's "clarification" before the first trial, together with the Commonwealth's bill of particulars before the second trial, and the testimony at the first trial are still inadequate, he may file a request for supplementary information. See *Commonwealth* v. *Kirkpatrick*, *supra* at 440 n.3; *Commonwealth* v. *Daughtry*, 417 Mass. 136, 142 (1994).

The order of dismissal of the Superior Court is reversed in part and affirmed in part. The case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*